## LINNEN *v.* BANFIELD.

1. FALSE IMPRISONMENT—SEARCH WARRANT—LIABILITY OF PERSON MAKING COMPLAINT.

   The owner of a store broken into, who makes complaint for a search warrant in due form, stating the facts to the officers, and nothing more, is not liable for the acts of the latter in exceeding or departing from the writ, or in arresting and detaining the person suspected.

2. SAME—DELAY IN ADMITTING TO BAIL—HOLIDAYS.

   It cannot be said, as a matter of law, that a delay of two days before granting an opportunity for giving bail to one arrested without a warrant on suspicion of felony was reasonable, although the intervening day was a holiday, in view of 2 How. Stat. § 7250, authorizing a justice to entertain a complaint for felony on Sunday, and 1 How. Stat. § 1591, providing that holidays shall be treated the same as Sundays for the purpose of holding court.

3. SAME—ADVICE OF PROSECUTOR—GOOD FAITH OF OFFICER—MITIGATION OF DAMAGES.

   The fact that a police officer acts under the instruction of the prosecuting attorney in arresting and detaining a person suspected of burglary does not constitute a defense to an action for false imprisonment, where the arrest was unauthorized; but it has a bearing on the good faith of the officer, and may thus affect the question of damages.

4. DAYTIME—TERM DEFINED.

   The term "daytime," in its legal significance, means the time from the rising to the setting of the sun, and that portion of the time after the setting of the sun, or before its rising, during which there is sufficient natural light, other than moonlight, so that the countenance of a man may be distinguished.

Error to Washtenaw; Kinne, J.  Submitted June 11, 1897.  Decided July 22, 1897.

Case by James Linnen against Paris Banfield, Melvin C. Peterson, David Collins, and John V. Sheehan for

trespass and false imprisonment. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*Lehman Bros.*, for appellant.

*J. W. Bennett*, for appellees Banfield and Collins.

*John L. Duffy*, for appellee Sheehan.

MONTGOMERY, J. This is an action of trespass. The declaration contains counts for false imprisonment, and for trespass in making a search of plaintiff's dwelling house. The defendant Banfield justified the arrest on the ground that it was made on reasonable suspicion of felony, and the search was justified under a warrant issued by a justice of the peace. The case was discontinued as to defendant Peterson.

The material facts appearing on the trial were as follows:

"Defendant John V. Sheehan is a dealer in books and stationery in the city of Ann Arbor, and was engaged in this business in December, 1894. Defendants Banfield and Collins were, respectively, chief of police and patrolman of said city during that month. The plaintiff was engaged in peddling patent buttons and song books. On the morning of December 31, 1894, Mr. Sheehan discovered that his store had been broken into during the preceding night, and that goods to the value of about $200 had been stolen out of it. With the goods stolen from the store were several dozens of gold pens and penholders. Mr. Banfield, as chief of police, was immediately called upon by Mr. Sheehan to investigate the burglary, and, in the search of the store, found a vest which apparently had been thrown off and left behind by the person who committed the crime. In a pocket of the vest were found a dozen gold pens. This vest had several marked peculiarities. The cloth portion was torn away from the lining on both sides, for a distance of six to eight inches from the bottom of the vest, and on one side the cloth and lining had been pinned together with a very long pin. On the other side, and near the lower inner corner of the cloth, there was attached a patent button, called

a 'pad-lock' or 'hand-snap' button, which was fastened to the cloth by means of a thin piece of metal slipped upon a small metallic rod projecting from the back of the button on the under side of the vest. This was the patent fastening. This button was similar to the buttons that plaintiff had been selling. When Mr. Banfield examined this vest, and saw the patent button attached to it in such an unusual place, he immediately recalled the fact that several weeks prior to this time, while walking upon one of the streets of Ann Arbor, in company with one Eugene K. Frueauff, he had observed some person offering buttons similar to this for sale, and that Mr. Frueauff and he had stood and watched this person for some time; that, while they were watching him, he had placed one of these buttons upon his own vest in precisely the same place where the button was attached to the vest found in Sheehan's store. He testifies that he remembered also that the person's vest was torn in a manner similar to the vest just found, and that one side of his vest had been pinned together as was this one. Mr. Banfield did not at that time know who this peddler was, nor had he learned his name or anything about him prior to the 31st day of December; but he immediately instituted a search, and about 4 o'clock of that day saw and identified the plaintiff as the man whom he had observed offering these patent buttons for sale. Mr. Frueauff also remembered the incident of the plaintiff offering some kind of a patent button for sale, and such a one as was upon the vest found in Mr. Sheehan's store, and had a distinct recollection of seeing one of these patent buttons on the plaintiff's vest at that time, in the identical place where was the button on the vest that was found in Sheehan's store.

"After a careful examination of the plaintiff regarding the ownership of the vest, and after a close comparison of the cloth of the vest and of the trousers that plaintiff was wearing on the 31st day of December, the defendant Banfield went at once to the prosecuting attorney of the county, and disclosed to him all that he knew about the burglary, and all the circumstances tending to show the connection of the plaintiff with the offense, and he furthermore informed him of the plaintiff's denial of any complicity in the crime. He informed the attorney of his recollection regarding the vest, similar in many respects to the one that had been found in Sheehan's store, and of Mr. Linnen's denial that the vest found in Shee-

han's store was his, and his claim that he never put a button on any one's vest in such a place, or in any other. Mr. Banfield then submitted the entire control and management of the matter to the prosecuting attorney, and said to him that he would not arrest the plaintiff unless he ordered him to do so. Thereupon the prosecuting attorney, Mr. Kearney, assumed entire control of the case, and immediately ordered the officer, Mr. Banfield, to lock the plaintiff up, and to go before a magistrate, get a search warrant for his house, and search it at once. Acting under these express commands, Mr. Banfield sent word to Mr. Collins, his deputy, to take the plaintiff to jail, and Mr. Collins did so. This is the entire connection of defendant Collins with the arrest of the plaintiff. At the same time that the prosecuting attorney directed the arrest of plaintiff, he ordered an immediate search of his house to be made. He summoned Mr. Sheehan to his office, to make the complaint for a search warrant, and sent his assistant to the office of the magistrate to prepare the complaint and warrant. Mr. Sheehan went at once to the magistrate's office, and made complaint for a search warrant."

The search warrant authorized a search in the daytime. There is a conflict in the testimony as to the time of day when this search was made. The justice testifies that he left his office about 5 o'clock p. m., and, after getting out on the street, met Mr. Sheehan, and they returned to the office. A lamp was lighted, and the complaint and warrant were prepared, and delivered to the officers between 5 and 6 o'clock. The officers then took the warrant, and drove to plaintiff's house, and made the search. Plaintiff was from home (having been previously arrested), but his wife testified that the officers arrived in the nighttime; that the house was lighted when they came. In this she is corroborated by her sister. Defendants' testimony tends to show that it was still light enough so that the officers were able to distinguish Mr. Lehman, of whom they made inquiry as to the location of plaintiff's house, at a distance of 15 rods, and that they left the justice's office between 4 and 5 o'clock. But it further appeared on cross-examination of defendant Banfield that Mr. Lehman

had a lighted lantern with him at the time he was recognized by defendant.

The circuit judge directed a verdict for defendants on both counts. This direction was right as to defendant Sheehan. It appears that he made complaint for the search warrant in due form, and that he stated the facts to the officers, nothing more. He was in no way responsible for the action of the officers in exceeding or departing from the writ, nor for the arrest and detention of plaintiff.

As to defendant Banfield the case is different. We think there was a case made for the jury on both counts Assuming that the arrest without warrant was justified, it was the duty of the arresting officers to take the accused before a magistrate at as early a date as was practicable. This arrest was made on the evening of the 31st, and the plaintiff was detained without bail until the evening of the 2d of January. The information upon which the warrant was sworn out was all this time in the possession of the officers. We think it should not be held, as a matter of law, that this delay was reasonable. *Malcolmson* v. *Scott*, 56 Mich. 465. It seems to have been assumed that, as the 1st day of January is a legal holiday, no proceeding could have been had on that day; but 2 How. Stat. § 7250, was construed in *Malcolmson* v. *Scott*, *supra*, as authorizing a justice to entertain a complaint for felony on Sunday, and by section 1591, 1 How. Stat., holidays are treated the same as Sundays for the purpose of holding court. The officers were authorized to detain plaintiff on the charge of felony without warrant for a reasonable time only. 1 Am. & Eng. Enc. Law, 732; *Rohan* v. *Sawin*, 5 Cush. 281. Time is presumed to be of some importance to one incarcerated without process, and promptness is required when the information upon which proceedings are to be based is at hand, in order that the accused may not be deprived of the right to give bail. We do not overlook the claim that the officer was acting under the instructions of the prosecuting attorney, but we know of no rule which authorizes a prosecuting attorney

to enlarge the authority of an arresting officer. While such instructions may bear on the good faith of the officer's acts, and thus affect the question of damages, it must be borne in mind that good faith does not excuse an *unauthorized* arrest.

As to the action under the search warrant, this was only justified if taken in the daytime, which means the time from the rising to the setting of the sun, and that portion of the time after the setting of the sun, or before its rising, during which there is sufficient natural light, other than moonlight, so that the countenance of a man may be distinguished. 16 Am. & Eng. Enc. Law, 707; Tiff. Cr. Law, 594. We think the question as to whether the search was in the daytime was, under the evidence, for the jury.

Judgment as to defendants Sheehan and Collins affirmed, with costs, and that as to defendant Banfield will be reversed, with costs, and a new trial ordered.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., did not sit.