PLUMMER, APPELLANT, *v.* NORTHERN PACIFIC RAILWAY CO. ET AL., RESPONDENTS.

(No. 6,074.)

(Submitted March 23, 1927. Decided April 8, 1927.)

[255 Pac. 18.].

*False Imprisonment—Plaintiff Detained in Jail at Request of Sheriff in Neighboring County—Agency—Evidence—Insufficiency.*

> 1. Where plaintiff in an action for false imprisonment was arrested on a charge preferred by the proper officer alleging an offense against a railway company, and one of the special agents of the company, at the request of the sheriff who had arrested plaintiff, transported him from the place of arrest to another city where he was to be held until an officer of the county in which the offense was committed would take him in charge, and where he was held for three days without being taken before a magistrate, the special agent was acting as a special deputy sheriff and not in the performance of his duty prescribed by his employer, and therefore neither he nor his company could be held liable in damages for his unreasonable detention in jail, and a directed verdict in their favor was proper.

---

[1]  False Imprisonment, 25 C. J., sec. 97, p. 514, n. 41, 42.

*Appeal from District Court, Yellowstone County; O. F. Goddard, Judge.*

---

1.  See 11 R. C. L. 806.

ACTION by John Plummer against the Northern Pacific Railway Company and another. From a judgment for the defendants, plaintiff appeals. Affirmed.

*Mr. Guy C. Derry* and *Mr. Benjamin P. Harwood,* for Appellant, submitted a brief; *Mr. Derry* argued the cause orally.

The failure to take plaintiff before a magistrate issuing the warrant, without unnecessary delay, made detention in the Billings jail for period of four days false imprisonment. The following sections in the Revised Codes for Montana for 1921 are applicable to our case in showing noncompliance with law on part of defendants: Sections 11735, 11739, 11744, 11747, 11749, 10920. (See *Vernon* v. *Plumes Lumber Co.,* 71 Cal. App. 112, 234 Pac. 869; 19 Cyc. 325; 11 R. C. L., p. 824.)

Plaintiff's detention in the jail at Billings, in the first instance, being wholly caused by the request and procurement of Gilday, he is responsible for the false imprisonment. (19 Cyc. 326, 327; *Knight* v. *Baker,* 117 Or. 492, 244 Pac. 543; 25 C. J. 512; 5 Ency. of Evidence, 733.)

Gilday's acts, being in the course of his employment and within the scope of his authority, and being caused, consciously or unconsciously, by the advice, direction and with the knowledge and consent of the defendant Northern Pacific Railway Company, acting through its assistant chief special agent, and his acts having been ratified by his employer, both defendants were jointly liable for false imprisonment. (*Grorud* v. *Lossl,* 48 Mont. 274, 280, 136 Pac. 1069; *Grimes* v. *Greenblatt,* 47 Colo. 495, 19 Ann. Cas. 608, 107 Pac. 111; *Cooper* v. *Johnson,* 81 Mo. 483; 25 C. J. 499, par. 72.) It was not necessary that the connection of the railway company with the illegal detention should have been shown by direct evidence. It could be inferred from the circumstances of the case. (*Grimes* v. *Greenblatt,* supra; *Holden* v. *Merritt,* 92 Iowa, 707, 61 N, W. 390; *Cook* v. *Proskey,* 138 Fed. 273, 70 C. C. A. 563; *Gittinger* v. *McRae,* 89 Md. 513, 43 Atl. 823.)

The arrest, or arrest and imprisonment, of a third person, where done to protect the interests of the master, may be within the scope of the authority of a servant, so as to make the master liable therefor. Such power may be impliedly vested in a detective. (26 Cyc. 1541; *Joske* v. *Irvine* (Tex.), 43 S. W. 278; *Penny* v. *New York Central R. Co.*, 34 App. Div. 10, 53 N. Y. Supp. 1043; 11 R. C. L. 810, 822; *American Express Co.* v. *Patterson*, 73 Ind. 430; *Eichengreen* v. *Louisville R. Co.*, 96 Tenn. 229, 31 L. R. A. 702, 34 S. W. 219; *Grayson* v. *St. Louis Transit Co.*, 100 Mo. App. 60, 71 S. W. 730.)

Whether Gilday was acting within the scope of his employment was a question for the jury. (*Rand* v. *Butte Electric Ry. Co.*, 40 Mont. 398, 107 Pac. 87; *United Cigar Stores Co.* v. *Young*, 36 App. D. C. 390; *Coolahan* v. *Field*, 159 Ill. App. 466; *Evansville T. & H. Ry. Co.* v. *McKee*, 99 Ind. 519, 50 Am. Rep. 102; *Craven* v. *Bloomingdale*, 171 N. Y. 439, 64 N. E. 169; *Holloway* v. *Kent*, 67 Misc. Rep. 440, 122 N. Y. Supp. 684; *Chicago Ry. Co.* v. *Radford*, 36 Okl. 657, 129 Pac. 834.)

*Messrs. Gunn, Rasch & Hall*, for Respondents, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

We submit that the plaintiff failed to prove that there was any unreasonable or unnecessary delay in getting him to Bozeman, or any unlawful or unnecessary imprisonment, and, therefore, failed to prove false imprisonment. 25 Corpus Juris, page 550, section 158, says: "The reasonableness of a plaintiff's detention, where there is no conflict in the evidence as to length of time and the circumstances under which plaintiff was held, is a question for the court." (See, also, 5 C. J. 429; 25 Id. 550; *Diers* v. *Mallon*, 46 Neb. 121, 50 Am. St. Rep. 598, 64 N. W. 722; *Knight* v. *International & Great Northern Ry. Co.*, 61 Fed. 87, 9 C. C. A. 376.)

It stands undisputed that Sheriff Patterson requested Gilday to take Plummer to Billings. Therefore, Gilday had the right to do what Patterson would have done had he personally

accompanied the prisoner. 25 Corpus Juris, page 514, section 97, says: "A person who assists one who is in fact a peace officer in the service of a warrant, which is not void, is not liable, and does not become so if the arrest, although lawful in the first instance, becomes a trespass *ab initio* by some subsequent misconduct of the officer." (See, also, 11 R. C. L. 806.)

Appellant contends that Gilday in bringing Plummer to Billings was acting within the scope of his authority and that, in any event, such question was for the jury. There is no evidence showing that Gilday in performing such act was acting within the scope of his authority or employment as a special agent of the railroad company. On the contrary, it affirmatively appears that he was not so acting. In 25 Corpus Juris, page 503, section 79, it is stated: "The fact that one is employed under the appellation 'detective' does not necessarily import that he has the authority to make an arrest or cause a detention. The mere employment of a detective to ascertain and report facts about an offense concerning the employer's business or property does not render the employer liable for an arrest made by the detective for the purpose of ascertaining whether the person arrested was implicated therein. * * * It must therefore be shown that the detective in making the arrest acted within the scope of his authority." (See, also, *Milton* v. *Missouri Pac. R. Co.,* 193 Mo. 46, 4 L. R. A. (n. s.) 282, 91 S. W. 949; *St. Louis & S. F. R. Co.* v. *Wyatt,* 84 Ark. 193, 105 S. W. 72; *Wade* v. *Campbell,* 211 Mo. App. 274, 243 S. W. 248; *Rockwell* v. *Erie R. Co.* (N. J.), 128 Atl. 482; *Markley* v. *Snow,* 207 Pa. 447, 64 L. R. A. 685, 56 Atl. 999.) There was nothing to submit to the jury on this question and a directed verdict for the defendant railway company was proper even if it could be held that Gilday was in any way to blame for Plummer's detention in the Billings jail after Gilday left him at such jail.

Appellant says that defendants "put the theory of the law in motion, which resulted in his unlawful detention" and are, therefore, liable therefor. Assuming for the moment, that

there was an unlawful detention, it does not follow that the defendants are liable therefor. There is no question about the validity of the process under which Plummer was arrested, or the jurisdiction of the officer issuing the same. 25 Corpus Juris, page 479, section 45, says: "The general rule is that one who merely makes a complaint or lays facts before a judicial officer in a matter over which the officer has general jurisdiction is not liable for an arrest or detention under process issued by the officer, although its issuance was erroneous in the particular case, in the absence of any further action upon his part constituting a participation in the arrest or detention. He is protected because he has set a judicial officer in motion, and what that officer does, acting on his own responsibility, is not to be charged to complainant." (See, also, *Linnen* v. *Banfield,* 114 Mich. 93, 72 N. W. 1; *Kreger* v. *Osborn,* 7 Blackf. (Ind.) 74; *Vittorio* v. *St. Regis Paper Co.,* 239 N. Y. 148, 145 N. E. 913; *Smith* v. *Clark,* 37 Utah, 116, Ann. Cas. 1912B, 1366, 26 L. R. A. (n. s.) 953, 106 Pac. 653; *Baker* v. *Secor,* 51 Hun, 643, 4 N. Y. Supp. 303; *Langford* v. *Boston & A. R. Co.,* 144 Mass. 431, 11 N. E. 697.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an action for false imprisonment. The complaint alleges that the plaintiff, John Plummer, was arrested on March 11, 1925, by the sheriff of Rosebud county, for the purpose of being held to answer a charge originating in Gallatin county; that on the following day T. F. Gilday, a special agent of the Northern Pacific Railway Company, acting within the scope of his authority from the company, took plaintiff from the county jail at Forsyth and transported him to Billings and there placed him in the Yellowstone county jail, where he was held for a period of three days at the instigation of Gilday and other special agents of the company, all without his consent and against his will. He asked for both actual and exemplary damages.

Issue was joined by a joint answer of the railway company and Gilday, and the cause brought on for trial before a jury. At the close of the taking of testimony, the court, on motion of the defendants, instructed the jury to return a verdict for the defendants, and judgment was entered according to the verdict rendered pursuant to the instruction. Plaintiff has appealed from the judgment, assigning error upon the direction of the verdict on the ground that the evidence adduced is sufficient to go to the jury as against each of the defendants, "as tending to prove the allegations of plaintiff's complaint." This assignment is argued under three heads: (1) That the failure to take plaintiff before the magistrate issuing the warrant, without unnecessary delay, made the detention of plaintiff in the Billings jail for three days false imprisonment; (2) that as such detention was, in the first instance, wholly caused by the request and procurement of Gilday, he is responsible for the false imprisonment; and (3) as Gilday was acting within the course of his employment and scope of his authority, and, consciously or unconsciously, by the advice, direction and with the knowledge of the railway company, acting through its assistant chief special agent, and his acts having been ratified by his employer, both defendants are liable for such false imprisonment.

1. We need not here determine whether the peace officer of the state violated the provisions of sections 11735 to 11749, Revised Codes of 1921, and were therefore guilty of a misdemeanor (section 10920), as no such officer is made a party defendant, and no question is raised as to the legality of the original proceeding against plaintiff, but, for the purposes of this opinion, may assume that the evidence is sufficient to warrant a finding that the plaintiff's detention at Billings was, in part, unreasonable and therefore illegal, and would constitute false imprisonment by the persons responsible therefor, under the definition thereof contained in section 10988, Revised Codes of 1921.

2. Was such incarceration the act of defendant Gilday, [1] acting as the special agent of the railway company? On

this question the evidence shows without dispute that the arrest was made by Sheriff Patterson of Rosebud county, on request of the county attorney of Gallatin county, and that officer was instructed by the county attorney, communicating through the assistant chief special officer of the railway company, to take the plaintiff to Billings where he would be received by an officer of Gallatin county; that Gilday was in Forsyth and was returning to Billings, and, for his own convenience, Sheriff Patterson requested Gilday to take plaintiff with him to Billings; that this was done, and, plaintiff making no objection, the two traveled from Forsyth to Billings on a "stub" train, which ran only as far as Billings. Arriving at Billings, Gilday requested Sheriff Sage of Yellowstone county to take charge of the prisoner until someone from Gallatin county should call for him, and he was taken by the officers of Yellowstone county and placed in the county jail. Gilday had nothing to do with the holding of plaintiff thereafter. The very next day the assistant chief special agent of the railway company, with a special agent, was in Billings on other business, and there learned that plaintiff was still in that jail and was considering means of securing his release; he called upon the plaintiff at the jail. He testified: "My purpose in going down to see Plummer was to see how he felt about his habeas corpus; if he was going to proceed at once, I would notify the county attorney at Bozeman he had better get busy to defend." There is no evidence in the record that this man advised or encouraged the further holding of plaintiff in jail; he was naturally interested in seeing that one charged with a felony against his company should not escape through the negligence of county officials, but only suggested that he would spur such officials to action.

The most that can be said from the record is that plaintiff was arrested on a charge preferred by the proper officer on facts laid before him by the agents of the railway company, and that Gilday acted in transporting him from Forsyth to Billings, but this Gilday did not do in his own person or as

agent of the railway company, but rather as a special deputy of the sheriff of Rosebud county.

Section 4774, Revised Codes of 1921, as amended by Chapter 157, Laws of 1925, defines the duties of a sheriff, among which are to "arrest and take before the nearest magistrate, for examination, all persons who attempt to commit or have committed a public offense," and he may "command the aid of as many male inhabitants of his county as he may think necessary in the execution of these duties." "Irrespective of such statute, a person who assists one who is, in fact, a peace officer in the service of a warrant, which is not void, is not liable, and does not become so if the arrest, although lawful in the first instance, becomes a trespass *ab initio* by some misconduct of the officer." (5 C. J., sec. 97; 11 R. C. L. 806.)

Sheriff Sage testified that he accepted the plaintiff from Gilday, presuming that he had some authority as a police officer or sheriff's officer, and that it was customary, when an officer was passing through a town and for any reason desired to stop over, to place a prisoner in the local jail; that Gilday told him that someone would come for the prisoner, but he did not recollect who, and, later he communicated with special agents of the railway company, as he considered that Gilday acted as a special agent of the company, though he did not testify that Gilday made any statement to him warranting his conclusion.

As there is nothing in the record to show that Gilday had any reason to suppose that an officer from Bozeman was not then in Billings or would not arrive before the next train left for Bozeman, or that he had any reason to believe that plaintiff would be held in Billings for an unreasonable length of time, or that he intended that he should be so held, under the circumstances, it cannot be said that Gilday was in anywise responsible for his unreasonable detention.

3. Since Gilday was acting under the direction of a peace officer in taking plaintiff to Billings, and the manner in which he discharged his duty on arriving at Billings was that of a peace officer under like circumstances, he was acting as a

special deputy sheriff and not in the performance of his duty as prescribed by his employer, the railway company, and, whether as a special agent he had authority to make an arrest or not, he was not, on this occasion, acting within the scope of his authority and under direction from his employer.

Nor does it appear that he acted under direction of the assistant chief special agent of the company, speaking either directly or in concert with the sheriff of Rosebud county. The assistant chief special agent was interrogated on the subject and testified: ''I did not tell anyone to bring him to Billings''; that after a telephone conversation with Peterson, county attorney of Gallatin county, in which he was instructed to tell the sheriff of Rosebud county to take plaintiff to Billings, in which statement he was corroborated by the county attorney, he told Gilday to ''notify the sheriff that Mr. Peterson would like to have him brought to Billings; I did not tell Gilday to bring him to Billings.'' There is nothing in the record discrediting this testimony.

Under the facts disclosed in the record, no lawful verdict could have been rendered against either defendant. (*Vittorio* v. *St. Regis Paper Co.*, 239 N. Y. 148, 145 N. E. 913; *Smith* v. *Clark*, 37 Utah, 116, Ann. Cas. 1912B, 1366, 26 L. R. A. (n. s.) 953, 106 Pac. 653; *Linnen* v. *Banfield*, 114 Mich. 93, 72 N. W. 1.) No error was committed in instructing the jury to return the verdict.

Judgment affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied April 26, 1927.