## ATLANTA ENTERPRISES, Inc., v. CRAWFORD, U. S. Marshal, et al.

District Court, N. D. Georgia.    November 1, 1927.

1. Searches and seizures ⊙⟹3(10)—District Court could determine whether seizure of fight films by its marshal under warrant issued by its commissioner was legal (18 USCA § 625).

District Court had jurisdiction to inquire into conduct of its commissioner in issuing warrant to search theater and of its marshal in seizing fight films under warrant, so long as they still held warrant and property seized; remedy under 18 USCA § 625 (Comp. St. § 10496¼o), not being exclusive.

2. Appeal and error ⊙⟹77(1)—Judgment determining validity of seizure under search warrant is final, and reviewable at once.

Judgment determining validity of seizure of goods under search warrant is final, and reviewable at once.

**3. Searches and seizures ⬤═▷3(4)—Evidence showed that probable cause existed for issuance of warrant for seizure of fight films, under statute providing for warrant where property is used as means of committing felony (18 USCA §§ 405, 612, subd. 2).**

Where it was proved that films shown in Atlanta, Ga., depicted Dempsey-Tunney fight as it occurred in Illinois, and that films of it were actually made there, and that films were found in office of theater in Atlanta, and that there were telegrams from New York relating to same, probable cause existed for issuance of search warrant, under 18 USCA § 612, subd. 2 (Comp. St. § 10496¼b), providing for warrant when property is used as means of committing a felony; felony being conspiracy to convey fight films in interstate commerce into Georgia, and overt act being their actual conveyance, in violation of section 405.

**4. Prize fighting ⬤═▷1—Transportation by mail or common carrier of fight films was not necessary to offense of sending them (18 USCA §§ 405, 406).**

While transportation by mail or common carrier of fight films is necessary to make offense of receiving such films, under 18 USCA § 406, it is not necessary to make offense of sending them, under section 405.

**5. Searches and seizures ⬤═▷3(4)—Affidavits for search warrants must be true at time they are finally sworn to.**

Affidavits for search warrants must be true at time they are finally sworn to, and procurers of warrant cannot take advantage of allegation that was known not to be true, no matter how positively made.

**6. Searches and seizures ⬤═▷3(4)—Affidavits for search warrant, stating that fight films were at theater, when affiants knew that they were not, warrant must be treated as though only daytime warrant (18 USCA § 620).**

Where affidavits for warrant to search theater for fight films stated positively that films were in theater to be searched, when affiants knew that at time affidavits were sworn to property was not there, but was in marshal's office, warrant had to be treated as though no such allegation had been inserted, and as though warrant in consequence was only daytime warrant, under 18 USCA § 620 (Comp. St. § 10496¼j).

**7. Searches and seizures ⬤═▷3(9)—"Daytime," in statute relating to search warrants, does not begin at sunrise or end at sunset, but includes dawn and twilight (18 USCA § 620).**

"Daytime," as used in 18 USCA § 620 (Comp. St. § 10496¼j), requiring search warrant to be executed in daytime, unless affidavits be positive that property is in place to be searched, does not begin at sunrise or end at sunset, but includes dawn at one end and twilight at the other; practical test being existence of sufficient light from sun to recognize man's features.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Daytime.]

**8. Searches and seizures ⬤═▷3(9)—Search warrant, executed at about 5:30 p. m. in October, would not be annulled on doubt as to whether it was still daytime (18 USCA § 620).**

Under 18 USCA § 620 (Comp. St. § 10496¼j), requiring search warrant to be executed in daytime, search warrant executed at about 5:30 p. m., Central time, October 25, 1927, in city of Atlanta, Ga., would not be annulled on doubt as to whether it was still daytime, where only effect would be another search warrant.

At Law. Petition by Atlanta Enterprises, Inc., against L. H. Crawford, United States Marshal, and another, for release of seized property. Seizure sustained.

Albert Mayer and Thomas W. Vernon, both of Atlanta, Ga., for applicant.

Clint W. Hager, U. S. Atty., of Atlanta, Ga., for respondents.

SIBLEY, District Judge. Under the direction of the United States district attorney, a deputy marshal, who had seen the prize fight in Illinois between Dempsey and Tunney, and had seen films thereof being there made, and who had later seen exhibited in the Howard Theater in Atlanta, Ga., motion pictures of the fight, together with another witness, made affidavit to these and other facts before the United States commissioner at Atlanta, who issued a search warrant for the seizure of the films as having been the instrument of a crime committed against the United States. Thereupon the marshal, on October 24, 1927, seized the films and carried them away from the theater. The following day, it being observed that the search warrant had not charged that the films were the instrument of committing a felony, but only a misdemeanor, in breaking the federal statutes against interstate transportation of fight films, the affidavits were reproduced with more detail, tending to show the co-operation of persons in New York with other persons there and in Georgia in sending the films into this state. A new search warrant was issued on the ground that the films had been used as the instrument of a felony, to wit, conspiracy to convey them in interstate commerce into Georgia, contrary to statute; the overt act being their actual conveyance thither.

These affidavits, as did the original ones, positively averred the films to be in the Howard Theater, the place to be searched, though they were known to be in the marshal's hands elsewhere; it being intended, however, that the marshal should redeliver them to the theater before serving the warrant. He did this on receiving the second warrant, taking

both the films and the warrant to the theater about 5:30 p. m., Central time, October 25, 1927. The second warrant was executed by him a few minutes after redelivering the films. A proper receipt was given the manager of the theater, and return was made to the commissioner issuing the warrant. No contest was made before the commissioner, who still held all the papers, but a petition was filed in the District Court against the marshal and district attorney, setting up the facts and praying a return of the property on the ground that the seizure was void, both upon the face of the proceedings and under the true facts, because there was no probable cause for issuing the warrant, and because it was executed in the nighttime, and upon a false oath as to the things to be seized being in the place to be searched. On the hearing a motion was made to dismiss the petition for lack of jurisdiction in the judge of the District Court, he not having issued the warrant.

The warrant was taken under chapter 18 of title 18 of the United States Code, on the second ground set forth in section 612 (18 USCA § 612; Comp. St. § 10496¼b) to wit: "When the property was used as the means of committing a felony." By section 611 (18 USCA § 611; Comp. St. § 10496-¼a) a warrant may be issued by a judge, state or federal, or a United States commissioner. The phrase "judge or commissioner" occurs frequently thereafter in the chapter, and must be understood generally as referring to the judge or commissioner who issued the warrant. Section 623 (18 USCA § 623; Comp. St. § 10496¼m) requires the executing officer to make return of the warrant to the judge or commissioner. Sections 625, 626, and 627 (18 USCA §§ 625–627; Comp. St. §§ 10496¼o–10496¼q) must be read together, and provide for a hearing by the officer issuing the warrant of any controversy as to the grounds on which the warrant had been issued, or as to the identity of the property seized, the reduction of the evidence to writing and its subscription by the witnesses being required, and direct what disposition is to be made of the seized property according to the decision reached, and provide, lastly, for the transmission of the original affidavit, the warrant, return, and inventory, and the evidence taken on the hearing, with a record of the officer's proceedings, to the clerk of the court having power to inquire into the offense involved, unless the issuing officer happens himself to have jurisdiction to try it.

This hearing is the statutory remedy to correct any mistake as to the grounds for issuing the warrant or as to the property seized. Ordinarily it should be followed, whether the officer issuing the warrant be a state judge, a federal judge, or a United States commissioner. But it will be noted that all three of the grounds for issuing a warrant specified in section 612 relate to a crime committed, and that section 627 so recognizes in requiring the proceedings to go finally to the court having jurisdiction of the the crime. Certainly, so soon as a prosecution is commenced in that court, the court is vested with authority over any evidence seized for its use, and may inquire into the propriety of the seizure. Ordinarily this inquiry ought to be made before trial of the criminal case. The judgment thereon is an interlocutory order in the criminal case, and reviewable only as such. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Gouled v. United States, 255 U. S. 298, 312, 41 S. Ct. 261, 65 L. Ed. 647; Coastwise Lumber Co. v. United States (C. C. A.) 259 F. 847; United States v. Marquette (C. C. A.) 270 F. 214. Perhaps jurisdiction to inquire into the seizure would attach so soon as the warrant and other proceedings are filed in the clerk's office in accordance with section 627.

[1, 2] In the present case, however, no prosecution has been instituted in this court, and it cannot be told whether this district or the Southern district of New York will be its scene. The warrant itself has not been filed in the office of the clerk of this court. Had the films been seized through others than the officers of this court, I should hold the statutory remedy under section 625 to be exclusive; but, because of the general supervisory power of the District Court over its marshal and its commissioner, I think there is an independent jurisdiction to inquire into their conduct, so long as they still hold the warrant and the property seized. United States v. Allred, 155 U. S. 591, 595, 15 S. Ct. 231, 39 L. Ed. 273; See discussion in United States v. Maresca (D. C.) 266 F. 713; United States v. Casino (D. C.) 286 F. 976. The judgment is seemingly final and reviewable at once. Perlman v. United States, 247 U. S. 7, 13, 38 S. Ct. 417, 62 L. Ed. 950.

[3, 4] The contention that no probable cause existed or exists for the issue of a warrant under ground 2 of section 612 must be overruled. It is proved that the films depict the Dempsey-Tunney fight as it occurred in Illinois, and that films of it were actually made there. Those seized must be originals, or copies of such films. Whether original or

copy, it was an offense against the federal laws to send them from another state to Georgia for public exhibition. Code, tit. 18, § 405 (18 USCA § 405). While it does not appear by what means they came to Georgia, they being mysteriously found in the office of the Howard Theater on the morning of Sunday, October 23d, it is shown that they were followed on Monday by a telegram from New York, announcing that arrangements had been made to send them. Other telegrams passed relating to their exhibition and to their mutilation, apparently for the purpose of obscuring their origin and ownership. There is no proof that the films seized are other than the films referred to in the telegrams, or that they were made in Georgia. The reasonable probability is that they were sent into Georgia from New York for public exhibition by the agreement and co-operation of several persons in intentional violation of the federal law. Their actual transportation being the overt act relied on to complete the conspiracy as a crime, they become property used as the means of committing a felony, and subject to seizure, just as would the firearm used to fire at the victim of a conspiracy unlawfully to kill. That transportation by mail or common carrier is not shown is immaterial. Such transportation is necessary to make an offense of receiving such films, under section 406 (18 USCA § 406), but not of sending them, under section 405.

[5-8] Section 620 (18 USCA § 620; Comp. St. § 10496¼j) requires that a search warrant be executed in daytime, unless the affidavits be positive that the property sought to be seized is on the person or in the place to be searched. This warrant contains the direction that it be executed in daytime or nighttime, and the affidavits for its issuance state positively that the films are in the place to be searched. Nevertheless both the district attorney and the affiants knew that, at the time the affidavits were sworn to, the property was not there, but in the marshal's office. They merely expected it to be forthwith returned to the theater. Affidavits cannot be made in escrow, so to speak. They must be true at the time they are finally sworn to. The procurers of the warrant cannot take advantage of an allegation that was known not to be true, no matter how positively made. The warrant must be treated as though no such allegation had been inserted, and as though the warrant, in consequence, was only a daytime warrant.

The question then arises whether the execution of it, entered upon at about 5:30

p. m., was in the daytime. The proof is that the sun set on October 25th at 4:52 p. m. There is some conflict in the testimony as to the exact minute the theater was entered, and as to whether one's features could have been recognized by the natural daylight. The theater, of course, and the streets, also, were brilliantly lighted electrically, so that the possibility of recognition by natural daylight is necessarily a matter of speculation. Daytime does not in law or by common understanding begin at sunrise or end at sunset, but includes dawn at the one end and twilight at the other. The practical test given by the ancient authorities is the existence of sufficient light from the sun to recognize a man's features. "Day," 1 Bouvier's Law Dictionary, 757, "Daytime;" 13 Cyc. 264.

In the service of a search warrant in ancient times, this was of importance to the householder, that he might know the person presenting himself as an officer. It must remain the legal test, even in modern cities, so far heavenly as Atlanta is, in that there is no night there. But since the daylight is no longer of practical consequence there, hairsplitting should not be indulged in respecting its continuance. I shall decline to annul the warrant on a doubt as to whether it was or was not still daytime at the Howard Theater at 5:30 p. m. The only effect of a contrary holding would be another search warrant, not quite so hastily secured and served.

The seizure will accordingly be sustained as in accordance with the law.