**MOORE v. UNITED STATES.***
No. 6284.

Circuit Court of Appeals, Fifth Circuit.
April 15, 1932.

*Rehearing denied June 3, 1932.

E. B. Donnell and E. M. Baynes, both of West Palm Beach, Fla., for appellant.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla., B. R. Cisco, Asst. U. S. Atty., of Miami, Fla., and Alfred Page, Sp. Asst. to Atty. Gen.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

Appellant, George W. Moore, was convicted upon an indictment which charged him with resisting with a deadly weapon a prohibition agent, Robert K. Moncure, in the execution of a search warrant which it was alleged authorized a search of his dwelling house and the seizure of any intoxicating liquor found on his premises. The indictment was drawn under 18 USCA § 121, and was demurred to on the ground that it did not charge an offense under that section, but only

alleged a violation of 18 USCA § 628, which authorizes a maximum punishment of two years in the penitentiary; but the demurrer was overruled, and the court imposed the maximum sentence of ten years authorized by section 121. A motion for continuance, because of the absence of a witness whose testimony it was claimed would be material to the defense, was denied.

It was undisputed that shortly after 6 o'clock p. m. on January 18, 1930, Moore shot and killed Moncure and another prohibition agent named Patterson. Moncure and Patterson and two other prohibition agents, Kugler and McNulty, had gone to Moore's dwelling house for the purpose of searching for and seizing intoxicating liquor. Moncure and Kugler went to the front door, while Patterson and McNulty stationed themselves at the back door. The front door of the house was open, but the screen door to the front porch was closed and fastened. Moore and Moncure were well acquainted with each other, and the former knew that the latter was a prohibition agent. Kugler testified that Moncure rang the doorbell and Moore came out on the front porch; that Moncure then told him he had a search warrant and asked to be let in; that Moore immediately turned back into the house, closed the door, and fired through it, instantly killing Moncure, who in the meantime had forced his way through the screen door. McNulty testified that, after the first shot was fired, Patterson rushed through the back door into the kitchen, where he also was shot and fatally wounded by Moore. In giving his testimony, Moore denied that he heard the doorbell or went out on the front porch. He said that while he was sitting in the living room with his wife and fourteen-year-old daughter he heard a loud noise at the screen door, and, as he got up to investigate, his wife cried out, "Look out George; they are going to shoot you;" that he saw a man in a crouching position in the kitchen; that he shut the front door in order to get to his gun which was behind it, and, as he did so, some one threw his weight against that door, and shouted, "Shoot him, shoot him, shoot him"; that he fired through the front door, then wheeled and shot the man in the kitchen, who turned out to be Patterson; and that he did not know that the people who had surrounded his house were officers. Moore's testimony was corroborated by that of his daughter; but his wife was not permitted to testify, because as was held by the trial court, she was not a competent witness. A police officer called by the defense testified that, when he arrived at Moore's

house, shortly after the shooting, he saw Patterson's pistol lying on the kitchen cabinet, over which Patterson was leaning, and that the pistol was cocked. The officer's testimony was not contradicted, and it was the same as the motion for continuance alleged the absent witness would give.

The affidavit for a search warrant stated that intoxicating liquor was located in Moore's dwelling house in violation of the National Prohibition Act (27 USCA); and, for the purpose of showing such liquor was being sold, it was stated that affiant had purchased therein on that day half a case of whisky. The search warrant recited the substance of the affidavit, and commanded a search and seizure, but in the daytime only. That warrant was issued and delivered to the prohibition agents at 5:44 or 5:46 p. m. on January 18, 1930. The sun set on that day at 5:52, and the commissioner who issued the warrant, warned the officers that it did not authorize a search or seizure at night. According to the testimony of Kugler and McNulty, they arrived at Moore's house not later than five minutes after 6, but, according to witnesses for the defense, they did not get there until about 6:15 p. m. Witnesses for the government testified that immediately after the shooting one's features could be recognized as far as across the street in front of Moore's house by natural daylight, and a witness who made experiments three days later was permitted to testify, over appellant's objection, that he could readily recognize the features of a man at a greater distance by natural daylight from five to twenty minutes past 6 p. m. Evidence was admitted, also over appellant's objection, to the effect that about a year before he was killed Moncure made a search of the same premises when Moore was present, but the court admitted that evidence for the limited purpose of showing that Moore knew Moncure was an officer. The court charged the jury that the search warrant was valid, but could be lawfully executed in the daytime only; that daytime continued beyond the setting of the sun as long as there was sufficient unaided light from the sun to recognize a man's features at a reasonable distance; and that, if the attempt to execute the search warrant was made after this interval had passed, Moore should be acquitted. Upon the assumption that the warrant was served in the daytime, as defined by it, the court charged the jury that Moore would not be guilty if he fired upon the officers for the bona fide purpose of protecting himself or his home, but that he would be guilty if he recognized Moncure and killed him without giving him an opportunity to serve the search warrant and make known his mission. In commenting upon Moore's testimony, the court asked the jury to consider whether it would have been more reasonable for him to have shot Patterson first, and why he used his gun just as soon as some one appeared on his premises. As to the testimony of Moore's daughter, the jury was invited to consider the probability that she had been coached, but "to deal charitably with her." These comments upon Moore's testimony were excepted to as being argumentative. No exception was taken to what the court had to say about the daughter's testimony, and this part of the charge was practically withdrawn in response to a suggestion that it was not justified by the evidence. Appellant's request to charge that daytime ended with sundown, and consequently that the attempted search was unlawful, was denied. All his other requests were also denied, but such of them as in our opinion were proper were given in substance by the court in its general charge.

The errors assigned are based upon the overruling of the demurrer to the indictment; the denial of the motion for continuance; the above-mentioned rulings and comments on the evidence; and the refusal to give the requested charges.

It was not error to overrule the demurrer. The only practical difference between sections 628 and 121 of title 18 U. S. Code (18 USCA §§ 121, 628) is that the former authorizes a maximum imprisonment of two years for the offense of knowingly and willfully resisting an officer in the attempt to serve or execute a search warrant, and does not necessarily contemplate the use of a deadly weapon; while the latter expressly punishes the use of a deadly weapon by one making such resistance, and imposes a maximum imprisonment of ten years. The objection could not be appropriately raised by demurrer, since the present indictment would be good under either of the above sections of the Code. The real contention sought to be raised is that the sentence is excessive, and that prohibition agents do not come within the protection of the statute punishing the use of deadly weapons in resisting searches and seizures. In our opinion, the contention is wholly untenable. The National Prohibition Act gives prohibition agents the same protection as was conferred by law at the date of its enactment in the enforcement of existing laws relating to the manufacture and sale of intoxicating liquors. 27

USCA § 45. The section under which the indictment was drawn protects any person authorized to make searches and seizures from unjustifiable assaults with deadly weapons, and therefore includes prohibition agents within its protection. Leininbach v. United States (C. C. A.) 38 F.(2d) 442.

■ Appellant was not injured by the refusal of the court to grant his motion for continuance; for the evidence which he claimed the absent witness would give was supplied by another witness at the trial and was not controverted. The search warrant and supporting affidavit were sufficient to authorize a search of Moore's dwelling house. There was a showing of probable cause, and facts were positively alleged from which no other inference could be drawn than that the dwelling house was then being used for the unlawful sale of intoxicating liquor. The requirements of 27 USCA § 39, were complied with. It was proper for the government to prove that Moore was present at the search of his home on the occasion prior to the one under consideration at the trial without producing a search warrant and showing that it was valid; because the only purpose was to prove that Moncure was within Moore's knowledge a prohibition agent, and as such had the right to break open doors in order to execute the search warrant involved in this case if Moore after notice of his authority and purpose refused him admittance. 18 USCA § 618. That search warrant did not contain the direction that it be served at night; its execution was authorized only in the daytime. It therefore could be lawfully served only in the daytime. 18 USCA § 620. We are of opinion that the court correctly charged that daytime did not end at sundown, but continued as long as there was sufficient light or reflection from the sun to enable one readily to recognize a man's features at a reasonable distance. 4 Cooley's Blackstone § 224; 2 Bishop's Cr. Law § 101; Bishop on Statutory Crimes § 276; Trull v. Wilson, 9 Mass. 154; Linnen v. Banfield, 114 Mich. 93, 72 N. W. 1; State v. Bancroft, 10 N. H. 105; Atlanta Enterprises v. Crawford (D. C.) 22 F.(2d) 834. It follows that in our view the testimony of the witness who made the experiments between five and twenty minutes after 6 p. m. three days after the attempted search of Moore's house, under similar weather conditions, was admissible.

■ It does not appear to us that the court's comment on Moore's use of the gun and why he had it was reversible error. It was not a one-sided comment, but was in favor of Moore if in shooting the prohibition agents his purpose was to protect his home, and against him if he was attempting to prevent a lawful search. It would have been better if the District Judge had omitted from his charge upon the facts the intimation that Moore's daughter was repeating a story that she had been told at home. But appellant's counsel seemed to have been satisfied with the judge's subsequent statement, as they took no exception to his remarks on this phase of the evidence as finally modified. We are not of opinion that appellant's counsel have sustained the position taken in their brief that the verdict of the jury was influenced by the bias and prejudice which they contend the District Judge displayed during the trial.

The judgment is affirmed.