Hyman Korn, J.
The defendants move for the vacatur of the search warrant issued on the 2nd day of February, 1962 by Hon. Samuel J. Ohringer, a City Magistrate, for the suppression of the evidence seized under such warrant, and for the return of the evidence so seized which predicates an indictment alleging violations of section 1372 of the Penal Law (contriving, drawing, and assisting in a lottery) and section 974-a of the Penal Law (operating a policy business).
The challenge to the legality of the indictment against the defendants herein is grounded on claims that (a) there was insufficient2 ‘ probable cause ’ ’ as required by law for the issuance of the search warrant by the Magistrate, (b) the warrant did not give a description with reasonable particularity of the persons to be searched and the property to be seized as provided under section 793 of the Code of Criminal Procedure; (c) the warrant *358 was not timely executed since it contained a direction that the search be made in the daytime whereas it is alleged that the warrant was not executed until after sunset of February 2,1962.
It appears that the deposition of the arresting officer in support of the issuance of the warrant in question contained his sworn assertion that illegal lottery and policy activities were engaged in by one John Doe acting in concert with a Richard Mathes (one of the defendants herein) and other unknown persons in apartment 4E in premises numbered 2181 Belmont Avenue, Bronx, New York, a multiple dwelling house; that the officer had been informed by an unnamed informant that he had placed a bet with the said Mathes in this apartment and that John Doe and two others were in the rooms at that time and in possession of policy records; that the officer also had made his own observations for a period of one and one-half hours and within that interval he had seen 12 persons enter and leave the premises, singly, after remaining therein only a short time.
It further appears that pursuant to the warrant that was issued, the arresting officer accompanied by other police officers, knocked on the door of the apartment designated in the warrant, and in response to the query “ who’s there? ” by an unknown occupant, the officer stated “ open the door, I am a police officer, I have a search warrant for this apartment ’ ’. After entry was made and the premises were searched, there was seized the sum of $4,475 from the person of the defendant Prisco, and adding machines, policy slips and other paraphernalia used in gambling activities were confiscated, with the defendants placed under arrest.
During the course of the argument on this motion, the arresting officer was called to the stand by the court and in response to a question as to when the apartment in question was entered by him, stated that entrance was made at 5:51 p.m. on February 2, 1962. An exhibit that had previously been submitted by defense counsel, to wit, the official weather report of the Weather Bureau of the United States Department of Commerce for this date, established that the sun had set that day at 17:15 (5:15 p.m. E. S. T.). The entry that appears on this record is as follows: “ sunset 17:15 cloudy ”.
It would appear that the issue of untimely execution of the warrant raised by the defendants is of first impression in this State. There is no dispute that the warrant contained the provision that it be executed in the daytime. The People concede that at the time the warrant was executed, namely when entrance was made into the apartment, the sun had already set. However, *359 it is contended that this period was not nighttime but still daytime, and therefore the warrant was legally executed.
In the Federal courts the procedure for the issuance and execution of search warrants is substantially that existing in our State. A research of the decisions in the Federal courts shows that there is some uncertainty of long standing as to the exact meaning of the term “ daytime” as used in connection with search warrants. Some decisions hold that 11 daytime ” continues after sunset for a limited period, with respect to service of search warrants (Distefano v. United States, 58 F. 2d 963). It was ruled that it is daylight for at least 30 minutes after the time when the sun had set, and construing nighttime from that point on until 30 minutes before the time when the sun rises (United States v. Liebrich, 55 F. 2d 341); other decisions limit daytime to that period from sunrise to sunset (United States v. Martin, 33 F. 2d 639). Many decisions hold that daytime refers to that period of time when there is sufficient natural light to enable one to recognize a person’s features at a reasonable distance (Sasser v. United States, 227 F. 2d 358; Moore v. United States, 57 F. 2d 840; Atlanta Enterprises v. Crawford, 22 F. 2d 834).
In these cases the decisions were based upon the principles enunciated in our common law. In a number of States there are decisions to a like effect. As stated, the reason for the varied viewpoints is that they have their background in common-law reasoning rather than statutory definitions as to what is daytime.
Although in New York State there is no legal definition of “ daytime ”, section 51 of the General Construction Law of this State sets forth that11 night time includes the time from sunset to sunrise ”, so that by logical sequence, daytime would include that time from sunrise to sunset. Section 220 of the Penal Law defining the elements relating to the crime of arson, states that the words £ night time, ’ as used in this article, include the period between sunset and sunrise ”.
The People have urged that a liberal interpretation of the word ‘1 daytime ” as defined under the common law be followed in this case, contending that the words are used primarily to insure that premises would not be searched at an unreasonable hour of night when its occupants are in repose. This claim, however, is unsupported by any legal authorities. It must be further pointed out in negation of this contention that a City Magistrate is empowered to issue a warrant that may be executed either at daytime or nighttime upon a positive affidavit that the property to be searched is on the person or in the place to be searched *360 (Code Crim. Pro., § 801). Search warrants are in derogation of the common-law rights and statutes governing their issuance should be strictly construed to prevent the evil it was aimed at. (See Keiningham v. United States, 287 F. 2d 126.)
A reading of the affidavit for the issuance of the warrant herein was not positive that the property to be seized was on the person, or in the place to be searched, and for that reason the direction of the court was that it be executed in the daytime.
The Federal rules also require the judicial officer to insert a direction in the warrant that it be served in the daytime, unless there are affidavits presented that positively establish that the property sought is on the person or the place to be searched, in which event the judicial authority may direct on the face of the warrant that it be served at any time (Fed. Buies Grim. Pro., rule 41, subd. [a]; see, also, 1 Varón, Searches, Seizures and Immunities, p. 391).
In view of the record that the warrant in question was executed by the arresting officer after the sun had set on February 2,1962, and that under the statutory definition (General Construction Law, § 51) this was nighttime, the court has no alternative but to hold that the warrant herein was untimely executed.
However, the charge of insufficiency of ‘ ‘ probable cause ’ ’ for the issuance of the warrant raised by the defendants and the further claim of inadequate descriptions contained in the said warrant are not open to review at this time. This court has no statutory authority to set aside a search warrant issued in the Magistrates’ Court (Matter of Police Benevolent Assn. v. Gagliardi, 9 A D 2d 929).
Although the Federal exclusionary rule, relating to illegal searches, now commanded in State prosecutions by the decision of the United States Supreme Court in Mapp v. Ohio (367 U. S. 643) may sometimes result in guilty persons escaping responsibility for acts proscribed by law, the protection of the constitutional rights of every accused person transcends such consideration. The court must follow the law of the land in suppressing evidence that is found tainted with illegality.
In the instant case, the validity of the daytime search warrant was destroyed by its execution after sunset which is nighttime by statutory definition in this State, and the evidence thus procured was in legal effect a seizure of property without a warrant and therefore subject to exclusion, unless otherwise made valid by other legal process.
The People, opposing the suppression sought by the defendants herein and without conceding the illegality of the warrant, advance the further view that by reason of the personal obser *361 vations by the police after the issuance of the warrant of criminal activities within the apartment in question, there existed “ probable cause ” that was sufficient for the officer gaining entrance without a warrant, and to make a search and seizure contemporaneous with legal arrests.
In this connection and subsequent to the oral arguments had herein, this court directed that a hearing be held on the sole issue of whether there existed sufficient ‘ ‘ probable cause ’ ’ by the police to legalize their entrance into the apartment in question, without the need of a search warrant.
At this hearing the arresting officer testified that the warrant that was issued to him in the Magistrates’ Court on February 2, 1962 was in his possession at 3:45 p.m. of that day when he was at the scene of the premises to be searched; that he could have executed the warrant at that time but decided to reconnoiter and make further personal observations.
In pursuance of this decision, the witness stationed himself on the fire escape attached to apartment 3E in premises 2181 Belmont Avenue, which adjoined apartment 4E on the same floor, in order to observe the activities of the occupants of these rooms.
The officer then stated that from his position on the fire escape, and with the shade of the nearest window drawn two-thirds down, he was able to look into the living room and from there into the bedroom of apartment 4E and observe the occupants seated around a table handling slips of papers, writing with pencils and pens and working on adding machines.
Controverting the officer’s version of what he had observed from the fire escape, defense counsel introduced in evidence photographs that were taken of the same scene by a professional photographer. This photographer testified that using the most advantageous position on this fire escape he was unable to look through the window of the living room of the adjacent apartment 4E.
Summarizing, the record of this case shows that a search warrant was applied for and issued to the arresting officer (Code Grim. Pro., § 792); that after entrance to the premises was made and property seized, a receipt for the property taken was given by the officer (Code Grim. Pro., § 803); that the officer made an inventory and affidavit of the property taken which was given to the Magistrate (Code Grim. Pro., § 805), all the foregoing in compliance with the requirements of the law relative to search warrants.
These undisputed facts give explicit indication that police entrance into the premises in question, the seizure of property *362 therein and the arrests of the defendants were based on the search warrant which this court has held to have been untimely executed. Besides, at the hearing the officer testified that he had acted pursuant to the warrant in his possession. It is obvious that this officer was unaware that his execution of the warrant after sunset made it invalid. His belated claim of “probable cause ” in order to legalize his acts appears to be an afterthought.
However, assuming arguendo that the issue of “probable cause ’ ’ was properly advanced by the District Attorney, and parenthetically this court directed a hearing solely for the purpose of having a reviewable record, nonetheless the evidence adduced at such hearing was legally insufficient to warrant a finding by this court legalizing the police action taken herein, without need for a warrant.
Accordingly, in view of the invalid execution of the search warrant herein and the lack of “ probable cause ” for the police acts complained against, the motion is granted to the extent that the seized evidence is suppressed. As to the requested relief that the property illegally seized be returned to the persons from whom it was obtained, this court is without power to make such a direction since evidence resulting from the fruits of crime cannot be returned by the court. The aggrieved defendants have recourse solely to civil proceedings in which they may establish legal ownership (Hofferman v. Simmons, 290 N. Y. 449; People ex rel. Simpson v. Kempner, 208 N. Y. 16; People v. Miller, 150 Misc. 791).