**UNITED STATES v. CALLAHAN et al.**

(District Court, M. D. Pennsylvania. March 4, 1927.)

No. 4041.

1. **Intoxicating liquors** ⊜⟹248—**Affidavit of prohibition agents held to show probable cause for search of brewery premises.**

Affidavit of prohibition agents *held* sufficient to show probable cause for issuance of a search warrant for brewery premises.

2. **Intoxicating liquors** ⊜⟹249—**Description of brewery premises in search warrant held sufficient.**

Description of a brewery in a search warrant *held* sufficient, where it was correctly described, except that the premises were stated to be bounded on the east by a railroad right of way and on the west by a named street, whereas the street was on the east and the railroad on the west side of the property; there being no other brewery in the vicinity.

3. **Intoxicating liquors** ⊜⟹249—**Search warrant for brewery premises held not invalid because not issued until thirteen days after making of affidavit.**

The lapse of 13 days between the making of an affidavit and the issuance of a search warrant therein for search of brewery premises *held* not an unreasonable length of time, and the warrant *held* valid.

4. **Searches and seizures** ⊜⟹7(9)—**Search warrant and search thereunder held not unlawful, because warrant erroneously authorized search in the nighttime, where it was in fact made in daytime (Espionage Act, tit. 11, § 10 [Comp. St. § 10496¼j]).**

A search warrant, and the search thereunder, *held* not unlawful, under Espionage Act, § 10 (Comp. St. § 10496¼j) because the warrant authorized search "during the daytime or nighttime," though the affidavit was not positive that the property to be searched for was in the place to be searched, where the search was in fact made in the daytime.

5. **Searches and seizures** ⊜⟹3(9)—**Search warrant and proceedings thereunder held not invalid, because officers failed to make return and inventory forthwith (Espionage Act, tit. 11, § 13 [Comp. St. § 10496¼m]).**

A search warrant, and search and seizure thereunder, are not invalid, under Espionage Act, § 13 (Comp. St. § 10496¼m), because the officers executing the warrant failed to make return and inventory forthwith.

Criminal prosecution by the United States against James Callahan and the Standard Brewing Company. On petition and rule to quash search warrant, return seized property, and suppress evidence. Rule discharged, and petition dismissed.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., and Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa., for the United States.

Joseph O'Brien and T. A. Donahoe, both of Scranton, Pa., for defendants.

JOHNSON, District Judge. This is a petition and rule granted thereon "to show cause why the property seized under the search warrant should not be returned to the petitioners, and why the evidence obtained upon said search should not be suppressed, and the search warrant quashed, and the Standard Brewing Company's property and the possession of the real estate be surrendered to the said Standard Brewing Company."

The petition and answer of the government thereto raise the following questions, which will be considered in order: First, was there probable cause for the issuing of the search warrant? Secondly, did the search warrant describe the property with particularity? Thirdly, was the period of 13 days between the making of the affidavit and the issuing of the search warrant too great a lapse of time? Fourthly, was the search warrant void, and the search thereunder illegal, because the warrant authorized the officers to enter and search the premises "during the daytime or nighttime," since the affidavit was not positive that the goods to be seized were in the premises to be searched, but where the search is actually made in the daytime? Fifthly, was the failure of the officers to make return and an inventory forthwith fatal to the proceedings?

[1] First, was there probable cause for the issuing of the search warrant? The United States commissioner found that there was probable cause for the issuance of the search warrant, and that the facts which establish the probable cause are contained in the affidavit of the prohibition agents, as follows:

"We, federal prohibition agents, James D. Moore, and C. P. M. Simpson, being duly sworn, depose and say: That on the morning of April 27, 1926, we, in company with Prohibition Agents Fetterman, Fawcett, and Feniello, visited the vicinity of the Standard Brewery Company, in Scranton, Pennsylvania, and while there we saw great volumes of steam issuing from the building, were able to detect a very distinct odor of brew around the brewery, and the railroad tracks leading into the brewery premises showed evidence of very recent use. The Standard Brewery Company is situated on property bounded on the north by the property of the Standard Realty Company, on the south by Walnut street, on the east by the Delaware & Hudson Railroad Company's right of way, and on the west by Penn avenue, and consists of a four-story brick brew house (brewery proper), joined by one-story brick building used as engine room, boiler room, and wash room; one-story frame cooperage house. The office is located on the first floor of a two-story frame building adjacent to the brewery and rented from the Standard Realty Company."

The court is of the opinion that the commissioner was justified in finding that there was probable cause for the issuance of the search warrant in this case, and this position is supported by the following authorities:

In United States v. Lepper (D. C.) 288 F. 136, it was held: "It is not required that the evidence should show that a crime was actually committed, or that the facts should be alleged strong enough to convict the defendant. It is enough if probable cause exists, or a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a discreet and prudent man in believing that a crime is being committed."

In Tritico et al. v. United States (C. C. A.) 4 F.(2d) 664, Bryan, Circuit Judge, said: "The search was not an unreasonable one. The officers, being made aware through one of their senses that the prohibition law was being violated, had the right to enter and make the search, although they did not have a warrant. McBride v. United States (C. C. A.) 284 F. 416."

In United States v. Gaitan (D. C.) 4 F. (2d) 848, on page 850, the following language of District Judge Bledsoe bears on the question involved: "In these days, with the all too widespread disposition to violate the provisions of the National Prohibition Law, made manifest by the congested condition of the calendars of our courts, I am not prepared to say that a person skilled in the subject-matter to the extent that he recognizes the unmistakable odor of fermenting mash is not justified in coming to the conclusion that such mash is being kept and retained for the purpose of distilling illicit liquor."

In Nicholson v. United States (C. C. A.) 6 F.(2d) 569, Evans, Circuit Judge, said: "The information upon which search warrants are secured may come from any source. The olfactory as well as the optic nerves are a dependable source of such information. It is not necessary that written documentary evidence be obtained, nor confessions secured. Plaintiffs in error were obviously conducting a brewery, and the prohibition agents were trained to detect the presence of intoxicating liquor, particularly that known as beer. They were qualified to state what they observed, from which the commissioner was required to find, and did find, probable cause to believe that intoxicating liquor was being manufactured upon the premises described in the warrant."

In Gracie v. United States (C. C. A.) 15 F.(2d) 644, it was held that, "upon the determination by the commissioner of whether probable cause existed for the issuance of a warrant, he is to exercise his own judgment whether the facts alleged in the affidavit constitute probable cause, and, unless this judgment is arbitrarily exercised, his determination that probable cause exists is conclusive."

In Carroll et al. v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, it was held that, "if the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

Other authorities sustaining the position of the court in this case are as follows: United States v. Huff (D. C.) 1 F.(2d) 493; Garske v. United States (C. C. A.) 1 F.(2d) 620; Vaught v. United States (C. C. A.) 7 F. (2d) 370; United States v. Old Dominion Warehouse (C. C. A.) 10 F.(2d) 736; United States v. Kasprowitz (D. C.) 14 F.(2d) 193; Weeke v. United States (C. C. A.) 14 F.(2d) 398; United States v. Borkowski (D. C.) 268 F. 408; McBride v. United States (C. C. A.) 284 F. 416; United States v. McGuire (D. C.) 300 F. 98; Steele v. United States, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757; Cornelius on Search and Seizure, p. 283, § 91; Blakemore on Prohibition (1925 Ed.) 419.

[2] Secondly, did the search warrant describe the property with particularity? Following is the description of the property to be searched as contained in the affidavit for the search warrant:

"The Standard Brewery Company is sit-

uated on property bounded on the north by the property of the Standard Realty Company, on the south by Walnut street, on the east by the Delaware & Hudson Railroad Company's right of way, and on the west by Penn avenue, and consists of a four-story brick brew house (brewery proper) joined by one-story brick building used as engine room, boiler room, and wash room; one-story frame cooperage house. The office is located on the first floor of a two-story frame building adjacent to the brewery and rented from the Standard Realty Company."

In the description in the affidavit, and also in the warrant, the property to be searched was "bounded on the east by the Delaware & Hudson Railroad Company's right of way, and on the west by Penn avenue." The reverse of this is the correct description as to these two boundaries; the property to be searched being bounded on the east by Penn avenue and on the west by the Delaware & Hudson Railroad Company's right of way. In all other respects, the description of the property to be searched, the brewery property, is correct, and the description is sufficient to lead the officers to the property to be searched. There was no other brewery property in the neighborhood, and the description in the affidavit and in the warrant would lead the officers, with reasonable effort, to ascertain and identify the place intended to be searched. The description in this case was sufficient. The position taken here is supported by the following authorities.

In Steele v. United States, 267 U. S. 498, on page 503, 45 S. Ct. 414, 416 (69 L. Ed. 757), Chief Justice Taft, in delivering the opinion, said: "The description of the building as a garage and for business purposes at 611 West Forty-Sixth street clearly indicated the whole building as the place intended to be searched. It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended. Rothlisberger v. United States [C. C. A.] 289 F. 72; United States v. Borkowski [D. C.] 268 F. 408, 411; Commonwealth v. Dana, 2 Metc. [Mass.] 329, 336; Metcalf v. Weed, 66 N. H. 176 [19 A. 1091]; Rose v. State, 171 Ind. 662 [87 N. E. 103, 17 Ann. Cas. 228]; McSherry v. Heimer, 132 Minn. 260 [156 N. W. 130]."

In State v. Hesse, 154 Minn. 89, 191 N. W. 267, it was held: "An elaborate description of a rural place by section numbers, etc., and further by a detailed description of the house in its location with reference to a city and highway, was held sufficiently definite, even though the section number was wrong, being 26 instead of 27, the identity of the premises being apparent from the description as a whole."

Other authorities in point are the following: United States v. Harvey (D. C.) 298 F. 106; United States v. McGuire (D. C.) 300 F. 98; Giacolone v. United States (C. C. A.) 13 F.(2d) 108.

[3] Thirdly, was the period of 13 days between the making of the affidavit and the issuing of the search warrant too great a lapse of time? In Hawker v. Queck (C. C. A.) 1 F.(2d) 77, the period of 21 days elapsed between the date of the affidavit and the issuance of the warrant. The court held that the warrant was valid, and that there was a showing of probable cause for the issuance of the same.

In United States v. McKay (D. C.) 2 F. (2d) 257, according to the affidavit for the search warrant, the sale of intoxicating liquor occurred September 2d, but the affidavit was not sworn to until September 14th, 12 days later. It was argued that the sale on the 2d was not evidence of possession 12 days later, and the court, discussing the objection, said: "The absence of such a limitation as to the lapse of time between the purchase of liquor and the making of an affidavit indicates that in the opinion of the Congress this was a matter which should be left to the discretion of the judge or commissioner, who determines whether there is or is not probable cause. There can be no hard and fast rule fixed by courts to fit every such situation, under all circumstances. Each case must depend upon its own facts. The person or persons who are charged with having whisky in their possession, the quantity of liquor, and the place where it is kept, may all be taken into account, as well as the alleged sale, and the lapse of time." And again it was said: "It was for the commissioner to determine whether the showing was sufficient to establish probable cause for believing that intoxicating liquors still were on the premises, and that such premises were still being used for the unlawful sale of liquor December 14th, when the search warrant was placed in the hands of the officers."

In Cornelius on Search and Seizure, § 87, p. 278, the following rule is laid down: "The few cases which have dealt with this question are unanimous in holding that an application for a search warrant must be made within a reasonable time after the commission of the alleged unlawful acts. What constitutes an unreasonable length of time is held to be a judicial question for the court."

Taking into consideration the nature of

the property to be searched and the facts set forth in the affidavit, the lapse of 13 days between the date of the affidavit and the date of the issuance of the warrant was not an unreasonable length of time, and the probable cause which existed on the 30th of April still existed on the 13th of May.

[4] Fourthly, was the search warrant void, and the search thereunder illegal, because the warrant authorized the officers to enter and search the premises "during the daytime or nighttime," since the affidavit was not positive that the goods to be seized were in the premises to be searched, but where the search is actually made in the daytime? In the present case the commissioner inserted the direction in the warrant that it should be served in "the day or night time," and the affidavits were not positive that the property was in the place to be searched, but the court finds as a matter of fact from the evidence that the warrant was actually served and the search made thereunder in the daytime. The evidence establishes the fact that the search was made at 4:20 a m. on May 13, 1926, at which time the officers could distinguish the features and countenances of the persons in charge of the property to be searched and could recognize and distinguish the persons. Cornelius on Search and Seizure, 271; Commonwealth v. Ranck, 16 Pa. Dist. R. 407; Trull v. Wilson, 9 Mass. 154.

Section 10, title. 11, of chapter 30 of the Act of June 15, 1917 (Comp. St. § 10496¼j), provides: "The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

"Where a search warrant is issued, and the magistrate inadvertently omits to strike out one of the alternative phrases 'in the daytime (or in the nighttime),' and the service is in fact made in the daytime, the execution is not thereby rendered invalid." Thorpe on Prohibition and Industrial Liquor, 423.

"A service actually made in the daytime is valid, although the warrant contains inconsistent provisions authorizing search either by day or night, where the magistrate inadvertently omitted to strike out the language in the printed form authorizing search at night." Blakemore on Prohibition (2d Ed., 1925) p. 438.

In United States v. Lepper (D. C.) 288 F. 136, it was held: "A search and seizure is not invalid, in that the facts set forth are insufficient to authorize a search warrant in the 'nighttime,' where the premises were actually searched in the daytime, or during that period immediately preceding the setting of the sun below the horizon; the search taking place at 4:30 in the afternoon of a day on which the sun set at 4:42 p. m."

In this case, Hazel, District Judge, said: "The search and seizure warrant against the dwelling of the defendant Lepper is attacked on various grounds. The first is that the facts before the District Judge were insufficient to authorize a search warrant in the nighttime; the second, that the premises consisted of two separate flats occupied by separate families, and that the warrant lacked specificness as to the particular place to be searched; and, third, that the facts set forth were wholly insufficient to authorize the issuance of the warrant to search any private dwelling. (1) The premises were entered, as defendant Lepper claims, at 5:45 p. m., December 13, 1922, in the nighttime, and searched, with the result that intoxicating liquor was discovered in the lower apartment occupied by him, and then and there seized. The evidence is in dispute as to whether the warrant was executed in the nighttime. Two affidavits have been submitted by which it satisfactorily appears that the prohibition agents entered upon the premises at about 4:30 o'clock, more than an hour before the time specified in the moving papers. On that day the sun set at 4:42 o'clock p. m., and hence the search and seizure was actually carried out in the daytime, or during that period immediately preceding the setting of the sun below the horizon. See definition of 'night,' Bouvier's Law Dictionary, Rawle's Revision, vol. 2, p. 502."

In this case the warrant authorized a search in the daytime or nighttime; the affidavit was not positive, but the search was actually made in the daytime. Judge Hazel refused the motion to quash the search and seizure warrant, and his decision was affirmed by the Circuit Court of Appeals of the Second Circuit. 295 F. 1017.

In State v. Sabo, 108 Ohio St. 200, 140 N. E. 499, in the Supreme Court of Ohio, it was held: "Where a search warrant is issued in attempted conformity with section 13485, General Code, and the magistrate employs a printed form containing the following language: 'These are therefore to command you, in the name of the state of Ohio, with the necessary and proper assistance, to enter, in the daytime (or in the nighttime), * * *' and inadvertently omits to strike out either of the inconsistent provisions as to the time of service, and the service is in fact made in the daytime, the execution of the writ is not thereby

rendered invalid." In this case, Marshall, Chief Justice, in delivering the opinion of the court, said:

"All of these causes were admitted to this court upon the sustaining of motions to certify the records, and each and all of them were for violations of the Crabbe Act (Gen. Code 1921, § 6212—13 et seq.), and were tried in the mayor's court of Grestline, Crawford county. While the cases are in no way connected, and were in fact tried separately, the error proceedings have been carried on jointly, and the essential facts are sufficiently common to all the cases to permit them to be disposed of in a single opinion.

"(1) The first question for determination arises under the form of the warrant for search and seizure, it being claimed that the warrant was wholly void by reason of alleged defects therein. It was attempted to draw the warrants in accordance with the form provided in section 13485, General Code, and it will be found that that statute has no special reference to the Crabbe Act, but on the contrary has application to search warrants generally. The pertinent portion of that section reads: 'These are, therefore, to command you, in the name of the state of Ohio, with the necessary and proper assistance, to enter, in the daytime (or in the nighttime). * * *' It was manifestly the legislative intent that the officer in preparing the warrant should strike out either the words 'in the daytime' or '(or in the nighttime).' In the evidence found in the records of these cases the officer inadvertently left both phrases in the warrant, and the question is therefore presented whether by reason of the fact of both phrases being left in the warrant the warrant is thereby rendered null and void. By reference to section 13484, General Code, it will be found that 'the command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night, in which case a search in the night may be ordered.'

"(2) By reference to the affidavit which was filed to obtain the issuance of the search warrant, it is found that the printed form of affidavit contained the following printed language: 'And that there is urgent necessity for the search therefor to be made in the night.' But these words were stricken out by the affiant, and no showing was therefore made of any necessity for this search being made otherwise than in the daytime. The record indicates that the search was in fact made in the daytime. Whatever may have been the legislative intent in throwing special protection around the property of persons during the night season, and showing special consideration for such property [of persons] in the night season, it is very clear that no violence was done to that legislative intent in the instant cases. For this reason the objection must be regarded as a purely technical one. Aside from its purely technical character, however, it is difficult to find any possible invalidity in the warrant by reason of the neglect of inadvertence of the officer preparing the warrant. The carelessness of the officer is of course to be condemned, but the validity of his process should not be overthrown on purely technical grounds where no possible injury has resulted. Such an imperfect warrant should not be employed to make repeated searches in the daytime and in the nighttime, neither should it be regarded as proper alternative process giving to the officer discretion to execute the same either in the daytime or nighttime, but, on the contrary, since it is recognized that more urgent necessity should exist for a search in the night season, the officer should in all cases of doubt employ the milder process. We have thus entered into a discussion of this matter at some length, because it has been brought officially to our attention that the same mistake has occurred in other instances, and, inasmuch as it may be assumed that the same carelessness may occur again, it is not improper to lay down a rule to govern such experiences. It being found that the process was lawful, it follows that all the evidence, obtained thereby was properly admissible in evidence, that the convictions thereon by the mayor should be affirmed, and that the Court of Appeals erred in reversing the same."

The magistrate had no authority to direct the search to be made in the daytime or in the nighttime without positive affidavits that the property to be found was located in the premises to be searched; but a lawful search in the daytime was actually made under the warrant in question, and no rights of the owners of the property were invaded. "The carelessness of the officer is, of course, to be condemned, but the validity of his process should not be overthrown on purely technical grounds where no positive injury has resulted.

[5] Fifth, was the failure of the officers to make return and an inventory forthwith fatal to the proceedings? Section 13 of title 11 of chapter 30 of the Act of June 15, 1917 (Comp. St. § 10496¼m), requires: "The officer must forthwith return the warrant to the judge or commissioner and deliver to him a written inventory of the property taken."

"The failure to make return is only an irregularity which the petitioner may correct on motion; it is not like the failure to execute it within 10 days as required by section 11 of title 11 of the Espionage Act." United States v. Kraus (D. C.) 270 F. 578.

"The failure of the officer to whom a search warrant is directed to make a return thereof cannot invalidate the search or seizure made by authority of such warrant. If the officer neglects to do this, he can be required to make return of the writ at any later time, or if the person whose premises were searched or whose property was seized is injured in any way by the failure to make this return, the officer failing to make such return is liable to him in damages. The making of the return is merely a ministerial act, to be performed after the warrant is executed." Rose v. United States (C. C. A.) 274 F. 245.

"The assertion that the search warrant itself 'is void and illegal,' for the reasons that properly executed copies of the same were not delivered to the defendants, or that an appropriate inventory of the property seized was not subsequently made, if true, would seem to me to be unavailing. If a full inventory is desired for any purpose, by appropriate motion it can now be required. If the officer was authorized, however, under a valid search warrant, to enter the premises in question, and did obtain therefrom evidence which may lawfully and properly be introduced in court in furtherance of a prosecution, I know of no rule of reason or authority which would suffice to enjoin the government from making use of such evidence merely because the officer failed to deliver a properly executed copy of the warrant to the person in charge of the premises searched. A valid search warrant being held, authority to search and seize was granted, and a failure to deliver a copy of the warrant after a valid entry into the premises and search of the same, could hardly, in my judgment, suffice to reach back and invalidate such search and seizure." United States v. Gaitan (D. C.) 4 F.(2d) 848, 851.

In State v. Noble, 96 W. Va. 432, 123 S. E. 237, it was held that evidence is admissible when obtained under a valid search warrant although no return was made thereon showing that it was executed or how it was executed.

In conclusion, the court is of the opinion, first, that there was probable cause in this case for the issuance of the search warrant; secondly, that the search warrant described the property to be searched with sufficient particularity; thirdly, that the period of 13 days elapsing between the date of the affidavit and the issuance of the search warrant was not too great a length of time; fourthly, the search warrant and the search thereunder were not void, because the officers were authorized to search the property in the daytime or in the nighttime, and the search was actually made in the daytime; fifthly, the search warrant and the proceedings thereunder were not invalid because the officers did not make a return and an inventory forthwith.

And now, March 4, 1927, the petition and the rule granted thereon, to show cause why the property seized under the search warrant should not be returned to the petitioners, and why the evidence obtained upon said search should not be suppressed, and the search warrant quashed, and the Standard Brewing Company's property, and the possession of the real estate be surrendered to the said Standard Brewing Company, is discharged.