Culver K. Barr, J.
The defendant is charged with violation of sections 225.05 and 225.15 of the Penal Law and section 44-12-a of the Municipal Code, in that, on April 11, 1969, he knowingly and unlawfully promoted gambling, possessed gambling records and was a keeper of a gambling place. In this hearing brought to controvert the search warrant herein and to suppress the evidence obtained in the execution of the search warrant, the court makes the following findings of fact and conclusions of law.
In the affidavit requesting the court to issue the search warrant, police officer Mario D. Di Fante stated that he had received information from a confidential source that the defendant (and others) was presently engaged in illegal gambling activity by accepting horse race bets from members of the public at Frank’s Novelty Store, 1764 Lake Avenue, in the City of Rochester. Officer Di Fante went on to say that on April 3 and April 7, 1969, the said confidential source, under Officer Di Fante’s supervision, actually placed horse race bets with the defendant at the above location. The officer concluded by stating that the defendant and his premises were carried on the police depart^ ment’s active gambling files and that the confidential source had been reliable on four previous occasions which resulted in both arrests and convictions.
Being convinced by this affidavit that there was probable cause to believe that the defendant was engaged in illegal gambling activity, I signed the search warrant herein on April 11, 1969. One part of the printed form search warrant reads ás follows: “ You are, therefore, commanded, in the day time, to make immediate search on the person of ”. (Emphasis supplied.)
The sole witness at the hearing was the arresting police officer, Mario Di Fante, who was called for the People. His testimony, insofar as here pertinent, was as follows:
At 6:45 p.m. on, April 11, 1969, Officer Di Fante, accompanied by three other police officers, arrived by car on the scene of *67 Frank’s Novelty Store, 1764 Lake Avenue, and, from the police car parked on Lake Avenue* observed the defendant inside the store.
At approximately 7:55 bxm. the defendant, still under Officer Di Fante’s observation, léít the store at 1764 Lake Avenue, walked next door and entered^ car wash building at 1776 Lake. Avenue where he remained for; approximately 15 minutes under Officer Di Fante’s observation.'
At approximately 8:10 p.m., as the defendant was exiting from the car wash building at 1776 Lake Avenue, Officer Di Fante approached the defendant and presented and delivered the search warrant to the defendant.
The premises were searched pursuant to the search warrant and many horse race bet slips were confiscated by the police officers. The defendant was placed under arrest at approximately 8:30 p.m. and the search was concluded at approximately 9:15 p.m., the written inventory being presented to the defendant at 9:35 p.m. at police headquarters. Officer Di Fante testified that the entire search was conducted in the presence of the defendant and that all. consfiscated items were shown to the defendant at the scene.
The only other evidence submitted to the court at the hearing was a printed statement from the Director of the United States Naval Observatory indicating that* within two minutes either way, sunset at Rochester, New York on April 11, 1969, was at 6:48 p.m. This was placed into evidence by defense counsel.
The legal issues or questions raised by defense counsel in the defendant’s moving papers and at the conclusion of the hearing were, basically, as follows:
1. That there did not exist from the affidavit of Officer Di Fante sufficient evidence to establish probable cause for the issuance, of the search warrant because, aside from the ‘ ‘ hearsay ’ ’ statements of Officer Di Fante, there were no statements of Officer Di Fante having independently observed any illegal activity on the part of the defendant.
2. That, in the execution of the search warrant, Officer Di Fante did not comply with section 803 of the Code of Criminal Procedure, in that a receipt and inventory of the property taken pursuant to the search warrant was not given to the defendant at the time taken but after the defendant was arrested and taken into custody.
3. That the affidavit and search warrant were not sufficiently particular as to the identification of the premises to be searched along with the search of the person of the defendant.
*68 4. That nowhere in the affidavit of Officer Di Fante does it appear that the defendant had any proprietary interest, leasehold interest, or a .right to the use or occupancy of the car wash building at 1776 Lake Avenue.
5. That the search warrant was improperly executed in that the search was not conducted in the “ daytime ”, as commanded in the search warrant, but was Conducted after sunset at approximately 8:15 p.m.
As the issuing Judge, it was my judgment that the allegations in the affidavit were sufficient to establish probable cause for the issuance of the warrant. As the hearing Judge, I have determined that the search warrant was properly obtained upon reliable information and was regular on its face. .
In order to procure a search warrant based upon information supplied to the affiant by an undisclosed informer, rather than upon the affiant’s personal observations, the issuing Judge must be informed of “some of the underlying circumstances from which the informant concluded that ’ ’ the defendant was engaged in illegal gambling activity and that the informer is credible or his information is reliable. (Aguilar v. Texas, 378 U. S. 108, 114; People v. Montague, 19 N Y 2d 121, cert. den. 389 U. S. 862; People v. Rogers, 15 N Y 2d 422; People v. Cerrato, 24 N Y 2d 1.)
The informant’s credibility is clear in this case as the informant actually placed horse race bets with the defendant on two separate occasions, the exact dates, times and places being specified in the affidavit, under the direct supervision of the affiant police officer. This is much more than a tip, as in the Spmelli case (Spinelli v. United States, 393 U. S. 410) and, to paraphrase Justice Harlan, a Judge when confronted with such a circumstance could reasonably infer that the informant had gained his information in a reliable way and not from an offhand remark heard at a neighborhood bar. It is obvious that the informant was obtaining the information about the defendant’s operations from his personal observations and direct contact with the defendant.
The informant’s reliability was established in the instant case by the fact that he was known to the affiant and had previously -furnished information which led to arrests and convictions on four previous occasions.
The affiant’s independent observations of the defendant, his store, and the car wash building next door not only verified the reliability of: the informant’s information, but also provided additional grounds for issuance of the warrant. The traffic of the defendant and others with him between the store and the *69 “ closed ” car wash building within such a short period was certainly the “abnormal activity” which Justice Harlan referred to in the Spinelli case (393 U. S., at p. 418). This activity was highly suspicious and reinforced the probable value of the tip. These independent observations of the affiant, when taken together with the information which he averred he received from a reliable informant, constituted a “ substantial basis ” for a Judge to conclude that the defendant was engaged in illegal gambling activity. (Spinelli v. United States, supra; People v. Montague, supra; People v. Rogers, supra; People v. Cerrato, supra; People v. Metze, 21 N Y 2d 806; Jones v. United States, 362 U. S. 257.) The search warrant, therefore, was issued upon the requisite reasonable or probable cause.
As for the claims that the search warrant did not sufficiently identify the premises to be searched and that the affidavit did not show any proprietary interest of the defendant in the car wash building, these contentions are without merit. The search warrant recites: “a two story cement block building, color gray, located on the east side of Lake Avenue, bearing numerals 1764, known as Frank’s Novelty Store; entire ground floor and basement to be searched; and, a one story cement block building with glass overhead doors located on the east and west side of said building; entire ground floor of said R. V. A. Car Wash, located at 1776 Lake Avenue in the City of Rochester, County of Monroe, State of New York”.
The affidavit states that the defendant answered a telephone call made to the car wash building at 7:15 p.m. on April 10, 1969, after the building was closed to the public. Further, that on April 3, 1969 Officer Di Fante personally observed the defendant walk from his store to the car wash building at 6:30 p.m. and, using a key, unlock the front door and enter the ear wash building, while said building was not open to the public for general business operations. This activity was also observed by the police officer on April 7th and April 10th at similar times in the evening while the car Wash building was closed to the public. These facts, reported in the affidavit, would lead any reasonable man to conclude that the defendant had, at least, the permission of the owner to use the building in question, if not, more likely, some legal interest in or right to use or occupy the building.
As for the contention that the written receipt and inventory of the confiscated property were not timely given to the defendant by the police officer, we need not determine the truth or falsity of this claim. Defects in complying with statutes requiring police to give receipts for property seized and requiring *70 a Judge to give an inventory (Code Crim. Pro., § 803) do not render illegal the seizure of contraband. (People v. Montanaro, 34 Misc 2d 624.)
"Which brings us to the final claim, that the search warrant was not properly executed as the search was not conducted in the ‘ ‘ daytime ’ ’, pursuant to the command of the search warrant, but was conducted at ‘ ‘ night time ’ ’, approximately some one hour and 15 minutes after sunset. The question, therefore, is: For purposes of executing a search warrant in the “ daytime ”, does “ daytime ” end at sunset?
Section 51 of the General Construction Law defines “night time ” a's follows: “ Night time includes the time from sunset to sunrise.” It should be noted, however, that the General Construction Law does not specifically define “ daytime ” and that there is no indication as to how the time of “ sunset ” is to be determined.
There is considerable authority to the effect that “ daytime ” does not end at the instant of sunset. Blackstone considered “the better opinion” to be “that if there be daylight or crepusculum, [twilight] enough to discern a man’s face ” it is daytime. (4 Blackstone’s Comm. [Gavit ed.], p: 844. See, also, Words and Phrases, vol. 28-A, pp. 263-267.)
This being the prevailing view of the Federal courts, it was held in Moore v. United States (57 F. 2d 840, 843) that daytime “ continued as long as there was sufficient light or reflection frbm the.sun to enable one readily to recognize a man’s features at a reasonable distance ” and that a warrant was timely executed between 13 and 23 minutes after sunset. The same standard was applied in Sasser v. United States (227 F. 2d 358) where the warrant was executed 4 minutes before sunrise; Atlanta Enterprises v. Crawford (22 F. 2d 834) where the warrant was executed 38 minutes after sunset, and Di Stef ano v. United States (58 F. 2d 963) which, however, held that an hour after sunset was too late. There are a number of State court decisions to the same effect, including People v. Watson (39 Misc 2d 808).
Another test for “ daytime ” applied by a Federal court is whether there is sufficient daylight t.o read a copy of the warrant (United States v. Woodson, 303 F. 2d 49 [warrant executed 19 minutes after sunset]); In United States v. Liebrich (55 F. 2d 341, 343) the court held that “it is daytime for at least thirty minutes after the time when the sun sets, and it is night time from then until thirty minutes before the time when the sun rises.”
*71 It may be noted that the time of “ sunset ” even as . recorded by recognized agencies in the same area, varies rather considerably, depending on where and how the observation is made. Apart from “ official ” recordings,, the moment the sun sinks below the horizon also varies substantially to ordinary observers in the same area, depending upon their elevation at the time. A governmental agency does not necessarily establish precisely the time of sunset at the point where the warrant was executed.
All of this being true, I am even further persuaded and convinced to conclude that the warrant in this case was timely executed by what I find, in my opinion, to be the implicit intent of our New York State Legislature in its amendment of section 801 of the Code of Criminal Procedure in 1965. By this finding, I dispose of the only case cited by defense counsel in support of his contention, that being People v. Prisco (36 Misc 2d 357), which case was decided in 1962.
The Prisco case held that the New York State Legislature had put the substantive and procedural criminal law within the operative scope of the definitions supplied by the General Construction Law. By its express term's, this statute is “ applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter.” (§ 110.)
As of July 1, 1962, section 801 of the Code of Criminal Procedure read as follows: “ Upon proof that there is probable cause for believing that the warrant cannot be executed in the daytime or that the property sought to be seized will be removed or destroyed if not seized forthwith, the judge, justice or magistrate miay in his discretion insert a direction in the warrant that it may be executed at any time of the day or night. In the absence of such direction, the warrant may be served only in the daytime.” (Emphasis supplied.)
By chapter 316 of the Laws of 1965 (eff. July 1, 1965) our State Legislature deleted the above two phrases “in the daytime ’ ’ and in their places substituted the following phrase: “ between the hours of 6:00 a.m. and 9:00 p.m.” It is my finding that, the Legislature thereby intended, despite the absence of recorded legislative intent, that a different meaning or application of the term ‘ ‘ daytime ’ ’ be given under section 801 of the Code of Criminal Procedure than that required by section 51 of the General Construction Law.
In other words, to avoid the conflict and uncertainty indicated in the cases I have heretofore cited, the Legislature said, for *72 purposes of this section, daytime is 6:00 a.m. to 9:00 p.m. and 6:00 a.m. to 9:00 p.m. is daytime. After all, it would seem that the general legislative intent requiring a specific direction in the search warrant for its execution at night is to protect persons and premises, except in special cases, from being searched during the hours of full darkness and rest.
This, question is raised in the instant case because, as a practical matter, following the above 1965 amendment, the printed search warrant forms used by the police department were not similarly revised by striking out the term “ daytime ” and substituting the new term ‘ ‘ between the hours of 6:00 a.m. and 9:00 p.m.” The unintentional use of the old form search warrant by the police officer in this case should not be the “ loophole ” through which the clear intent, purpose and goal of our Legislature is permitted to slip awiay, despite the procedural rule of criminal law requiring strict construction of these statutes.
The answers to the several legal questions raised by the defense all militate to the conclusion that the search warrant in this case was issued for probable cause and was properly and timely executed and the ensuing search, therefore, legal. Accordingly, the motion to suppress the evidence seized under the search warrant is denied.