520 P.2d 275

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Robert MONTOYA, Defendant-Appellant.**

**No. 1158.**

Court of Appeals of New Mexico.

Feb. 20, 1974.

Hendley, J., dissented in part and concurred in part and filed opinion.

Lopez, J., specially concurred and filed opinion.

Robert N. Singer, Coors, Singer & Broullire, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Special Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted and sentenced for receiving stolen property in violation of § 40A–16–11, N.M.S.A.1953 (2d Repl. Vol. 6). He appeals. We reverse.

Defendant attacks the validity of the search warrant and the denial of a speedy trial.

A. *The search warrant is void because it contained no direction that it be returned and it was not returned.*

The search warrant in this case had no direction on its face that it be returned to the issuing judge and no such return was ever made. No inventory was made by the police officer in connection with the search and none was ever returned. The record shows: (1) The property seized was placed in the back seat of the police car and transported to the police station where it was locked up in a safe. (2) The police officer believed he returned the reports and the original search warrant to the district attorney's office at some unknown time. (3) The search warrant was not returned to any magistrate. (4) The search warrant made its first appearance March 30, 1972, at a hearing on the motion to suppress before the district judge. (5) The search warrant was never amended or corrected by order of court.

The indictment was filed February 25, 1971. The statutes on search warrants in effect at that time are applicable. They are §§ 41–18–1 and 41–18–2, N.M.S.A.1953 (2d Repl.Vol. 6, 1971 Supp.).

■ Section 41–18–1(C), supra, which describes the contents of a warrant, commands that the warrant *"shall* designate the justice, judge or magistrate to whom it *shall* be returned." [Emphasis added]. This is mandatory.

Section 41–18–2, supra, sets forth the *form* of the warrant. It ends with the following words:

. . . and if you find the same or any part thereof, to bring it before me at ——— (stating the place).

Date ———————

———————————, (justice, judge or magistrate).

The search warrant did not designate the judicial officer to whom the warrant must be returned, nor the words set out supra.

■ Section 41–18–1(D), which describes the *execution* and return with inventory, provides in part:

The return *shall* be made promptly and *shall* be accompanied by a written inventory to any property taken. The inventory *shall* be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken . . . and *shall* be verified by the officer. The justice, judge or magistrate *shall* upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant. [Emphasis added].

■ This provision is mandatory. It is obvious that the statutory requirements for search warrants and the return thereof were not complied with. The issue before us is: What is the effect of this non-compliance? We have considered the various statutory requirements that were not met and conclude as follows: (1) The statutory requirement that the search warrant contain language directing that it be returned to the issuing magistrate is mandatory. A search warrant not containing this language is void and evidence obtained with such a warrant is inadmissible. (2) The failure to return the warrant as required by statute made the warrant void and the evidence obtained with the warrant inadmissible. (3) As this court has stated

previously, minor defects in the form or nature of the return of a search warrant are merely ministerial and will not void the warrant or result in the evidence obtained with the warrant being inadmissible. The defects in the warrant herein, however, could not be classified as minor.

(1) *The failure of the search warrant to direct that it be returned*

Defendant contends the warrant was insufficient on its face pursuant to § 41–18–1(E)(2), supra. The State did not answer this contention.

In State v. Dalrymple, 80 N.M. 492, 493, 458 P.2d 96, 97 (Ct.App.1969), this court considered the effect of a nighttime search conducted under the authority of a search warrant which on its face failed to authorize a nighttime search despite a statute specifically requiring such authorization. This court concluded that the defendant's motion to suppress should have been granted and quoted the following with approval:

"The requirements of search warrant statutes are mandatory in every material respect."

State v. Perea, 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973) is not contrary to the position maintained herein. The court said (page 1291):

Absent a showing of prejudice I will not set aside an otherwise *valid search warrant* because of defects in the return of the warrant. Those matters of procedure relating to the return of a search warrant have consistently been held to be *ministerial acts* which, even if defective or erroneous, do not require a search warrant to be held invalid unless prejudice is shown. [Citing cases] [Emphasis added].

The search warrant used in *Perea* is one approved by the Court Administrator pursuant to Rule 17(C), § 41–23–17(c), N.M. S.A.1953 (2d Repl.Vol. 6, 1973 Supp.). It contained language directing a return to the judge. Although the holding of *Perea* quoted above seems broad enough to cover the problem of a warrant *defective on its*

*face,* that issue was not before the court. The search warrant was valid on its face.

No such command was inserted in the warrant in the instant case. It was invalid.

State v. Dawson, 276 So.2d 65 (Fla. App.1973) states the general rule as follows:

It is clear then that the warrant authorizing the search of appellee's premises in the case at bar was *defective on its face* by failing to contain the command that the person executing the warrant bring the property found and the person in possession thereof before the magistrate issuing the warrant or some other court having jurisdiction of the offense as prescribed . . . .

The court's decision in Jackson, supra, [Jackson v. State, 87 Fla. 262, 99 So. 548 (1924)] seems consistent with the rule generally prevailing throughout the country, at least since 1900 . . . . [Emphasis added].

See United States v. Rael, 467 F.2d 333 (10th Cir. 1972).

The *Dawson* case pointed out that a similar decision by the Illinois Supreme Court, White v. Wagar, 185 Ill. 195, 57 N.E. 26, 50 L.R.A. 60 (1900) "has been cited with approval by the highest courts in at least eight of our sister states . . . ."

It does not require citation of additional authority to support the legal concept that a search warrant, absent a command to return, is illegal and void. The motion to suppress must be sustained. The property seized is inadmissible in evidence at the defendant's trial.

(2) *The failure to make a return is illegal and renders the evidence obtained inadmissible*

The issue is: Does the enforcement officer have a mandatory duty to return the warrant and the inventory to the judge or is this a ministerial duty which may be excused for lack of prejudice shown?

We must distinguish between those cases which hold that a return has been made to

the judge but minor defects in the form and nature of the return occurred, and those cases where no return or inventory has been made. In the former cases, defects may be considered ministerial, and in the latter, the search warrant is invalid.

The history of this issue began with Rose v. United States, 274 F. 245, 250, 251 (6th Cir. 1921), cert. denied 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921). This case arose under the War-time Prohibition Act. The court, without citation of authority, said:

> The failure of the officer to whom a search warrant is directed to make a return thereof cannot invalidate the search or seizure made by authority of such warrant. *If the officer neglects to do this, he can be required to make return of the writ at any later time,* or if the person whose premises were searched or whose property was seized is injured in any way by failure to make this return, *the officer failing to make such return is liable to him in damages.* The making of the return is merely a *ministerial act,* to be performed after the warrant is executed. [Emphasis added].

*Rose,* supra, has been interpreted in many ways and often used as authority for ignoring defects in the return of a search warrant. People v. Schmidt, 172 Colo. 285, 473 P.2d 698, 702 (1970) interpreted *Rose,* supra, as follows:

> In Rose the court pointed out that failure to make a proper return could always be corrected at a later time in the proceedings. Deficiencies, if any exist in the return in the present instance, can always be corrected by order of court. See, Williams v. State, 125 Ga.App. 170, 186 S.E.2d 756 (1971).

Giles v. United States, 284 F. 208 (1st Cir. 1922) and Murby v. United States, 293 F. 849 (1st Cir. 1923), considering the same federal statute, left the pathway of *Rose,* supra. These cases recognize that the mandate given to an officer of the law to search is a mandate to "exercise one of the most drastic and offensive powers of government . . . the great weight of authority is that the warrant should be specific and complete within itself . . . . ."

Berger v. New York, 388 U.S. 41, 60, 87 S.Ct. 1873, 1884, 18 L.Ed.2d 1040 (1967) declared the New York permissive eavesdrop statute unconstitutional because its language permitted a trespassory invasion of the home or office by general warrant contrary to the Fourth Amendment against unreasonable searches and seizures. Among the reasons given by the court was the following:

> *Nor does the statute provide for a return on the warrant* thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties. In short, the statute's blanket grant of permission to eavesdrop is without adequate judicial supervision or protective procedures. [Emphasis added].

United States v. Eastman, 465 F.2d 1057, 1062 (3rd Cir. 1972) followed the language of *Berger,* supra. The government, relying on the *Rose* case, supra, claimed that the failure to make a correct return or to file proper notice was merely ministerial, and was waived. The court disagreed. It said:

> The touchstone of our decision on this aspect of the case at bar is not one in which an inventory was delayed but rather it is one in which specific provisions of Title III were deliberately and advertently not followed. *In other words the failure to file the notice or inventory is no mere ministerial act.* It resulted from a judicial act which on its face deliberately flouted and denigrated provisions of Title III designated for the protection of the public. This we cannot countenance . . . the motion to suppress must be granted. [Emphasis added].

We hold that the omission in the search warrant of the command to return the warrant and inventory and the failure to return the warrant and inventory, not

being ministerial acts, render the warrant void.

(3) *The search warrant, its execution and return must protect the public.*

The history of the search warrant, and its misuse in law enforcement, must remain indelibly imprinted on the minds of the judiciary and the people. We must not presume that every person charged with a criminal offense during a period of present crime indulgence should be forced to incriminate himself by illegal searches and seizures under the Fourth Amendment to the Constitution of the United States.

The Fifth Amendment provides that no person " . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

The Fourth Amendment provides in part:

The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .

The Fourth Amendment has its origins in the right against self-incrimination. When a person's effects are seized under a valid search warrant, its execution and return, the evidence seized is admissible in evidence against a person charged with a criminal offense. He is compelled to be a witness against himself, innocent or guilty. But when the search warrant is invalid, the evidence seized cannot be used in evidence because it compels the accused to be a witness against himself.

Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886) sets forth the history of the Fourth Amendment. It describes this problem in strong language; the obnoxious, repulsive and aggravating incidents which arise " . . . by silent approaches and slight deviations from legal modes of procedure." The court said:

It is the duty of courts to be watchful for the constitutional rights of the citizens and against any stealthy encroachments thereon. Their motto should be *obsta principiis* (resist the first approaches or encroachments).

In McNabb v. United States, 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943), Justice Frankfurter wrote in this vein:

Experience has therefore counseled that safeguards must be provided against the danger of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be trusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.

The purpose of the statute and rules on search warrants is to demand care on the part of each participant to protect the rights of the public.

The failure of the police officer to return the warrant and the inventory renders the warrant invalid.

The evidence seized pursuant to the warrant was inadmissible in evidence.

B. *Defendant was not denied the right to a speedy trial.*

██ Defendant was indicted February 24, 1971. On February 26, 1971, defendant was arraigned and pleaded not guilty. Trial was set on June 2, 1971. On June 1, 1971, defendant moved for an order vacating the present trial setting for at least two months because defendant was incarcerated in the federal penitentiary at Anthony, New Mexico, for a period of three years; that defendant and his attorney did not have time for adequate preparation for trial. On June 1, 1971, the trial court granted the motion.

On August 12, 1971, upon motion of the State, the trial court vacated the trial which had been set for August 23, 1971. Trial was to be continued until such time as the defendant be returned to Bernalillo County from the federal penitentiary.

On February 3, 1972, the trial court issued a warrant for the arrest of defendant and his detention. On March 6, 1972, the trial court issued a Writ of Habeas Corpus Ad Prosequendum to the warden of the federal penitentiary to bring defendant to Bernalillo County Courthouse for trial. The record is silent on what occurred and when defendant was brought to Bernalillo County.

On March 30, 1972, defendant appeared in court for a hearing on pending motions of defendant to suppress evidence. Over seven months had elapsed between August 12, 1971, and March 30, 1972.

On May 25, 1972, the case came on for trial. The defendant moved for dismissal of the indictment because of a delay of 15 months from indictment to trial. Delay was caused in part by the defendant (1) because of vacating an early setting, and (2) because of hearing on his own motions.

The only delay with which defendant was faced was that period between August 12, 1971 and the date he was brought to Bernalillo County in 1972. This delay was waived by a hearing on defendant's motions held March 30, 1972.

The facts of this case do not fall within the protection granted defendants in State v. Mascarenas, 84 N.M. 153, 500 P.2d 438 (Ct.App.1972); State v. Harvey, 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973).

Defendant was not denied a speedy trial.

This case is reversed. Defendant is granted a new trial free of any evidence seized under the search warrant.

It is so ordered.

HENDLEY, J. (dissenting in part and concurring in part).

LOPEZ, J. (specially concurring).

HENDLEY, Judge (dissenting in part and concurring in part).

I disagree with and dissent from the opinions of both Judge Sutin and Judge Lopez regarding the search and seizure question. I agree that defendant was not denied his right to a speedy trial.

First, as to Judge Sutin's opinion: Conspicuously absent from that opinion is the purpose for the inventory and return requirements. Those requirements are first to provide defense counsel access to the warrant, Fitez v. State, 9 Md.App. 137, 262 A.2d 765 (1970); and second, to protect the searched party from having his seized property stolen or misplaced by the police. State v. Cortman, 251 Or. 566, 446 P.2d 681 (1968), cert. denied, 394 U.S. 951, 89 S.Ct. 1294, 22 L.Ed.2d 487 (1969). There is no question in this case that defendant had access to the warrant. He was served with a copy. While protection of the property seized is a desirable object, the use of the exclusionary rule to help prevent the possibility of theft or misplacing is overkill of the highest order. This is particularly true when the searched party can use his civil remedies for any loss that may occur as a result of a seizure.

It is precisely because the inventory and return requirements are wholly irrelevant to the purpose of the Fourth Amendment, and indeed become important only after invasion of privacy has occurred, that most courts have termed those requirements ministerial. See State v. Perea, 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973); United States v. Kennedy, 457 F.2d 63 (10th Cir. 1972), cert. denied, in 409 U.S. 864, 93 S. Ct. 157, 34 L.Ed.2d 112 (1972); United States v. Moore, 452 F.2d 569 (6th Cir. 1971), cert. denied, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972), reh. den. 409 U.S. 899, 93 S.Ct. 101, 34 L.Ed.2d 158 (1972); United States v. Haskins, 345 F. 2d 111 (6th Cir. 1965); Gilbert v. United States, 291 F.2d 586 (9th Cir. 1961), reversed on other grounds in Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L. Ed.2d 750 (1962); Evans v. United States, 242 F.2d 534 (6th Cir. 1957), cert. denied, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957); Giacolone v. United States, 13 F. 2d 108 (9th Cir. 1926); Rose v. United States, 274 F. 245 (6th Cir. 1921), cert. de-

nied, 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921); United States v. Sims, 202 F. Supp. 65 (E.D.Tenn.1962); United States v. Callahan, 17 F.2d 937 (M.D.Pa.1927); State v. Cortman, supra; State v. Ronniger, 7 Or.App. 447, 492 P.2d 298 (1971); People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970); Williams v. State, 125 Ga.App. 170, 186 S.E.2d 756 (1971); Fitez v. State, supra; State v. Brochu, 237 A.2d 418 (Me.1967); People v. Di Polito, 61 Misc. 2d 65, 304 N.Y.S.2d 868 (1969); People v. Fusaro, 53 Misc.2d 510, 279 N.Y.S.2d 126 (1967); People v. Montanaro, 34 Misc.2d 624, 229 N.Y.S.2d 677 (1962); People v. Phillips, 163 Cal.App.2d 541, 329 P.2d 621 (1958), overruled on other grounds in People v. Butler, 64 Cal.2d 842, 52 Cal.Rptr. 4, 415 P.2d 819 (1966); State v. Blackwell, 49 N.J.Super. 451, 140 A.2d 226 (1958); State v. Struce, 1 S.W.2d 841 (Mo.1927); Joyner v. City of Lakeland, 90 So.2d 118 (Fla.1956).

Judge Sutin attempts to distinguish the contrary cases by asserting that only facially inadequate warrants, as opposed to inadequately administered warrants, are invalid. The cases do not support such a distinction. Moreover, assuming that the acts of inventory and return are merely "ministerial", as Judge Sutin must to assert this distinction, it seems illogical to conclude that the mere inadequate directions to perform those acts are fatal, particularly since the consequences of fatality are so drastic.

Berger v. New York, 388 U.S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967) and United States v. Eastman, 465 F.2d 1057 (3 Cir. 1972) are no help here. They are eavesdropping cases, where the defendant may not even know he is being searched. Both courts discussed the inventory and return requirements only as a means of giving the defendant notice of the search, and rightly found that the requirements were necessary in that situation. In this case, as in all personal, physical search cases, defendant well knew he was being searched. He was also served with a copy of the warrant.

It is unfortunate that the exclusionary rule, which was designed to curb the abuse of police power, has spawned an abuse of its own—the strange judicial idea that any use of the exclusionary rule must be a good use. It is little wonder that the rule is under attack. It is ironic indeed that those who think they were breathing the most life into it are in fact killing it.

I also cannot agree with Judge Lopez. I will not detail the information contained in the warrant.

Prong one of *Aguilar* can be met if the information received is detailed enough to imply that it was other than vague hearsay. Spinelli v. United States, 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The information in the instant affidavit suffices in that regard. As Judge Lopez himself points out: "[t]he tip in the case at bar was independently corroborated in three ways. . . ." In *Spinelli* there was only one major corroborated detail. To say that, despite this imbalance, the present tip was ". . . less incriminating and corroborative . . ." is to place on the magistrate an intolerable burden of fine sifting and weighing of relative incrimination and corroboration. Common sense must be used by the magistrate in evaluating the affidavit, for it has not been drafted by lawyers but by laymen in the haste of a criminal investigation. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Accordingly, I dissent on the search and seizure issue and would affirm the conviction.

LOPEZ, Judge (specially concurring).

I concur in that part of Judge Sutin's opinion resolving defendant's speedy trial claim. I also concur in the result reached by Judge Sutin that defendant should have, ". . . a new trial free of any evidence

seized under the search warrant." The motion to suppress should have been granted, in my view, because the affidavit of the officer was insufficient to support the warrant. Since my decision is based on this ground, I express no opinion on the views stated by Judge Sutin.

The most critical portion of the affidavit in the case at bar is a telephone tip made by an unknown informer to the victim of the crime, who relayed the information through police channels to the affiant. The tip, as summarized in the affidavit, is set out as follows:

" . . . Mr. Grosver [referring to the victim, Ansan Grosvenor] advised [Detective] Ray Alt that he received a call, that the person committing the burglary was a man named 'Bob'. Grosver [sic] further related that the caller advised him that his stolen coin collection was presently in the possession of Will Sanchez, who ownes [sic] a Credit Bureaus [sic] in Belen and Taos, New Mexico. Grosver [sic] reported that Sanchez has an airplane and is preparing to fly the coin collection in his (Sanchez[']) plane this AM from Belen Airport to the Sunland Airport in El Paso, Texas. Sanchez will attempt to sell the coins in El Paso. . . ."

Some question could be raised as to whether Sanchez' alleged travel plans were part of the tip or an independent conclusion of Grosvenor. I will assume the former because, " . . . issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense . . .", and because, " . . . their determination of probable cause should be paid great deference by reviewing courts. . . ." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

A two prong test for judging the sufficiency of an unidentified informant's tip was set out by the Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964), as follows:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was 'credible' or his information 'reliable.' . . ."

Since the affidavit does not state any basis for the informant's conclusions concerning who was involved in the burglary and subsequent possession of the coins, prong one of the Aguilar test is not met. See State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct. App.1969).

A question arises as to whether this defect in the affidavit is properly before this Court for review. I believe that the defendant has pointed out the defect with sufficient specificity to satisfy the requirements of § 21–2–1(15)(14), N.M.S.A.1953 (Repl.Vol. 4), requiring "[a]rgument and authorities." The brief in chief states:

" . . . there exists no indication in the Affidavit that the information of the unknown 'caller' was the personal knowledge of the caller, or was conveyed to the caller by even further removed and unknown sources. In short, the Affidavit set forth hearsay on hearsay . . . emanating from an undescribed, 'anonymous' and totally unknown source. . . ."

By this statement the defendant correctly alleged that the basis for the informant's conclusion, whether personal observation or otherwise, was unknown. This is a sufficient factual basis for a prong one argument. See State v. Lewis, supra. In addition, defendant, in the same paragraph of his brief, cites the applicable case, Aguilar, and quotes the portion of that case which holds the affidavit involved therein defi-

cient on the basis of prong one. In the next paragraph, the defendant anticipates and refutes the State's argument, based on Spinelli v. United States, supra, to the effect that a sufficiently corroborated tip need not contain prong one information. Since the brief stated a factual basis for the prong one argument and since it discussed the applicable legal concepts, there was compliance with § 21–2–1(15)(14), supra.

Furthermore, the State waived any defect. The answer brief states:

"The courts have consistently held that the citizen informer's tip [whose identity is known], and often the underworld informer's tip [whose identity is unknown] does not have to set forth how the informer had come into possession of the information, whether based on personal observation or otherwise. This is particularly true when there is considerable detail as to the items that have been taken, or there is other substantiating evidence available. [citing cases] . . ."

The State argues the prong one claim directly, on the merits. Therefore, it has waived any defect under § 21–2–1(15)(14), supra. See Sproles v. McDonald, 70 N.M. 168, 372 P.2d 122 (1962).

If any doubt remains, I believe the problem can be resolved by reference to this Court's discretion. Once the argument has passed a certain threshold level of specificity, the question of compliance with the rule largely becomes one of judgment. Hard and fast rules cannot be made in such a situation. Here there is no question that defendant has challenged the affidavit in some manner. The reason why I think that discretion should be exercised in favor of review here relates to the nature of this case. This is a criminal case with a question of constitutional rights involved. Judge Sutin has ably pointed out the importance of these rights and the necessity of scrupulously safeguarding them. Furthermore, there is another forum in which these rights can be asserted. Federal ha-

beas corpus is available despite the existence of state procedural bars. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Failure to review will only prolong the matter and delay the ultimate vindication of the defendant's rights.

The merits are governed by Spinelli v. United States, supra, where the Court stated:

"... In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The amount of corroborated detail in the tip in this case is comparable to that alleged in the *Spinelli* affidavit, which the Court held insufficient. The tip in the case at bar was independently corroborated in three ways. First, it was learned that the Will Sanchez who was being surveilled was the same Will Sanchez referred to in the tip since the police learned that there was indeed a Will Sanchez operating a credit bureau in Belen as the informant stated. Second, the police surveillance indicated that Sanchez was indeed associating with a person named "Bob." That person was the defendant, Robert Montoya. Third, the defendant, Sanchez and others were evidently preparing for travel as the informant alleged.

In *Spinelli* there was only one major corroborated detail: that the defendant was seen at an apartment whose two telephone numbers corresponded to those which the tipster alleged were being used by the defendant in illegal bookmaking operations. I think the fact of association and planned travel of the two persons named in the tip in this case is less incriminating and corroborative than the telephone numbers in *Spinelli*, "... in light of the common knowledge that book-

**128**

making is often carried on over the telephone and from premises ostensibly used by others for perfectly normal purposes. . . ." This conclusion is given more weight by the fact that the defendant, Robert Montoya, was not specifically named in the tip, as was the defendant in *Spinelli*. The amount of corroborated detail here falls short of that found in cases like Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), which the Supreme Court used as a touchstone in *Spinelli*. Therefore, the motion to suppress should have been granted.